UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARMING BEATS LLC, | Civil Action No. 1:21-cv-04727-ARR-RER |
| **Plaintiff,** | |
| v. | **DECLARATION OF**<br>**JAY R. McDANIEL, ESQ.** |
| IMPROV PLAYHOUSE THEATER, INC., | |
| **Defendant.** | |

I, **Jay R. McDaniel**, of full age, hereby declares the following under penalty of perjury:

1.      I am a Member of Weiner Law Group LLP and I represent the Defendant Improv Playhouse Theater, Inc, in this matter. As such, I am fully familiar with the facts of this case. I make this Declaration in support of the within Motion to Dismiss the Complaint for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)..

2.      Attached hereto as **Exhibit A** is a true copy of the Complaint filed in this matter.

3.      Attached hereto as **Exhibit B** is a courtesy copy of the unpublished decision Bonilla v. Nelson & Kennard, 2020 WL 5763774 (E.D.N.Y. Sept. 28, 2020), reconsideration denied, 2021 WL 2400914 (E.D.N.Y. June 11, 2021).

4.      Attached hereto as **Exhibit C** is a courtesy copy of the unpublished decision Morningstar Films, LLC v. Nasso, 2021 WL 4076979 (E.D.N.Y. Aug. 15, 2021).

5.      Attached hereto as **Exhibit D** is a courtesy copy of the unpublished decision Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc., No. 16-CV-442 (NRB), 2017 WL 449913 (S.D.N.Y. Jan. 18, 2017).

{Signature page to follow}

1

I declare under penalty of perjury that the foregoing is true.

_____
Jay R. McDaniel, Esq

Dated:  October 12, 2021

2145431_1

2

# EXHIBIT A

Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.
250 Park Ave, 7th Floor
New York, New York 10177
Phone: (212) 300-5358
Fax: (888) 265-7054

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

CHARMING BEATS LLC,                          Case No.: 21-cv-4727

              Plaintiff,                  **ECF CASE**

        v.                                       **COMPLAINT AND JURY DEMAND
                                             FOR DAMAGES FOR COPYRIGHT
                                             INFRINGEMENT**

IMPROV PLAYHOUSE THEATER INC.,

              Defendant.
-------------------------------------------------------------------x

      Plaintiff CHARMING BEATS LLC, by and through the undersigned counsel, brings this

Complaint and Jury Demand against defendant IMPROV PLAYHOUSE THEATER INC. for

damages based on copyright infringement and related claims pursuant to the Copyright Act and

Copyright Revisions Act, 17 U.S.C. §§ 101, et seq. ("the Copyright Act" or "Act") and

violations of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-05 (the "DMCA").

Plaintiff alleges below, upon personal knowledge as to itself, and upon information and belief as

to other matters so indicated.

## JURISDICTION AND VENUE

1.     This court has Subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal

question jurisdiction) and 1338(a) (jurisdiction over copyright actions).

## SPECIFIC JURISDICTION

2.  CPLR § 302 (a)(3) authorizes this Court to exercise jurisdiction over nondomiciliaries who commit a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if it: . . . (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

3.  At bar, defendant is nondomiciliary headquartered in Libertyville, IL

4.  Defendant intentionally infringed plaintiff's exclusive rights to its copyrighted recording "Starscapes (Ambient)" – U.S. Copyright Registration No. SR 708-541 (the "Copyrighted Track"); this is a tort committed outside the state.

5.  Defendant was put on notice of its infringing activity multiple times. Defendant elected to continue to infringe after each notice.

6.  In fact, the infringing advertisement at issue is still active on defendant's YouTube page.

7.  Defendant was put on notice by plaintiff and plaintiff's counsel that its infringing activity was having consequences in this state.

8.  Defendant elected to continue knowing its action would have consequences in this state. As of the date of this Complaint the subject infringing advertisement is still active and available to the public.

9.  The Copyrighted Track at issue here was used by defendant to promote its services, and overall company.

10.  Defendant is an international company with offices in Brazil and Florida and generates substantially all of its revenue from interstate or international commerce.

11.     Defendant also regularly does or solicits business, or engage in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state.

12.     Jurisdiction is conferred over defendant pursuant to CPLR §§ 302(3)(ii).

## VENUE

13.     A plaintiff may bring a case in: "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ; or, (3) if there is no district in which an action may otherwise be brought . . . a judicial district in which any defendant is Infringing  to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1)-(3).

14.     At bar, a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## DUE PROCESS

15.     There are no due process concerns in light of the fact that defendant committed an intentional tort that it knew had an effect in this Judicial District.

16.     Upon information and belief, defendant frequently contracts with companies in this Judicial District such that it reasonably knows it may be haled into this forum.

## PARTIES

17.     Plaintiff CHARMING BEATS LLC is a limited liability company organized under the laws of New York with a headquarters located at 75-10 197th St, 2nd Floor, Flushing, NY 11366.

3

18.     Upon information and belief, defendant IMPROV PLAYHOUSE THEATER INC. ("IMPROV") is a corporation organized under the law of the State of Illinois with a primary headquarters located at 735 N. Milwaukee Avenue, Libertyville, IL

## FACTS

19.     Plaintiff is the sole beneficial owner by assignment of an original musical composition and recording titled *"Starscapes (Ambient)"* – U.S. Copyright Registration No. SR 708-541. See **Exhibit 1.**

20.     Defendant is a theatre that offers classes both on-line and in person.

21.     Defendant caused to be produced a video advertisement titled "Film Camp 2013 Documentary" (the "Infringing Advertisement").

22.     Without a license or authority, defendant copied the Copyrighted Track and then synchronized it to the Infringing Advertisement.

23.     Defendant then distributed the Infringing Advertisement to YouTube where it was, and is, publicly displayed on defendant's YouTube Page. See <https://www.youtube.com/watch?v=obsZtOund9c>.

24.     At no time did the defendant have the right to use the Copyrighted Track in any manner.

25.     Defendant was informed by YouTube that the musical content in the Infringing Advertisement belonged to plaintiff.

26.     Defendant elected to ignore the YouTube notice.

27.     Until in or around April 2020, plaintiff conducted dozens searches of YouTube each year, the Infringing Advertisement did not appear in any of the searches.

4

28. Plaintiff hired a third-party search firm to assist in its search for individuals and entities that exploit plaintiff's copyrighted recordings and compositions without a license.

29. On or about June 23, 2021, plaintiff received notice from the third-party search firm of the existence of the Infringing Advertisement.

30. Plaintiff notified defendant of the infringement, by email, on the same day it discovered the infringement. See **Exhibit 2**.

31. Defendant did not respond and continued to infringe.

32. On or about July 4, 2021, plaintiff's counsel served a cease and desist on defendant demanding it disable the Infringing Advertisement. See **Exhibit 3**.

33. At no time did the defendant produce a license, nor did it cease and desist.

34. Defendant's failure to comply with the separate notices from YouTube, plaintiff, and plaintiff's counsel evidences defendant's intent to infringe.

35. Defendant knew it was infringing plaintiff's exclusive rights when it synchronized the Copyrighted Track to the Infringing Advertisement. Defendant knew it was infringing plaintiff's exclusive rights when it uploaded the Infringing Advertisement to YouTube.

36. As of the date of this Complaint, the Infringing Advertisement is still active on defendant's YouTube page.

37. Defendant infringed plaintiff's exclusive rights as set forth in Section 106 of the Act, directly and indirectly, and its knowledge of the infringement and failure to comply with multiple notices satisfies the "reckless disregard" standard for enhanced damages set forth in Section 504(c) of the Act.

5

38. This demonstrates the callous disregard the defendant has to its legal responsibilities, and only an award at the top of the statutory scale will serve to stop defendant from routinely violating the Copyright Act.

39. Defendant did not include any identifying information in the Infringing Advertisement which would have allowed plaintiff to identify defendant's use of the Copyrighted Track. Specifically, the Infringing Advertisement omits the Copyrighted Track's title, album name, author, label, and copyright owner.

40. Defendant's removal and/or failure to include any copyright management information after notice is a violation of 17 U.S.C. § 1202 – the DMCA. Plaintiff is entitled to up to $25,000 for each violation of the DMCA pursuant to Section 1203 of the DMCA.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT

41. Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth here at length here.

42. It cannot be disputed that the plaintiff has a valid, registered copyright, and owns all rights to the Copyrighted Track.

43. Defendant without authority from plaintiff, reproduced, publicly displayed, and/or synchronized plaintiff's Copyrighted Track in its entirety to the Infringing Advertisement.

44. Defendant created and displayed the Infringing Advertisement for the sole purpose of commercial gain.

45. Defendant refused to cease and desist after multiple demands from plaintiff directly, and through plaintiff's counsel.

46. Defendant's use of the Copyrighted Track was not for criticism, comment, news reporting, teaching, scholarship, or research.

6

47.     Defendant's use was not transformative.

48.     Defendant elected to reproduce, synchronize, and/or distribute plaintiff's Copyrighted Track, using the entirety of the track, without a license.

49.     As a direct and proximate result of defendant's infringement of plaintiff's exclusive rights to the Copyrighted Track as set forth in Section 106 of the Act, plaintiff has incurred damages, and requests an award of defendant's profits in excess of plaintiff's compensatory damages, and plaintiff's compensatory damages, plus costs, interest, and reasonable attorneys' fees.  Plaintiff may also elect to recover statutory damages pursuant to 17 U.S.C. § 504(c)(2) for willful infringement/reckless disregard of up to $150,000, but not less than $30,000 plus costs, interest, and reasonable attorneys' fees

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF DMCA OF 1998, AS AMENDED,**
**17 U.S.C. §§ 1201, et seq.**

50.     Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth at length here.

51.     Plaintiff always distributes its copyrighted recordings, including the Copyrighted Track here, with copyright management information including the title, author, label, and copyright owner.

52.     Defendant could not have obtained a copy of the master recording for the Copyrighted Track without this information.

53.     Master recordings are tightly controlled by plaintiff to prevent unauthorized commercial use – like the infringing use at issue here.

7

54.     A master recording is an authenticated and unbroken version of a musical recording (typically 96 kHz / 24 bit) with the highest-possible resolution—as flawless as it sounded in the mastering suite.

55.     Defendant's Infringing Advertisement is synchronized to a very high-resolution copy of the Copyrighted Track.  This high-resolution version cannot be obtained without copyright management information being included.

56.     Defendant removed plaintiff's copyright management information, and copied, synchronized, publicly displayed, and/or distributed the Copyrighted Track.

57.     Defendant failed to include any information which identified the Copyrighted Track, the author of the Copyrighted Track, the owner of any right in the Copyrighted Track, or information about the terms and conditions of use of the Copyrighted Track.

58.     Defendant continued to publicly display the Infringing Advertisement with no attribution after YouTube, plaintiff, and plaintiff's counsel separately informed defendant that it was infringing plaintiff's rights to the Copyrighted Track.

59.     Defendant violated the DMCA each time it wrongfully distributed the Infringing Advertisement.

60.     Defendant did the forgoing with the intent to conceal the infringement.

61.     Plaintiff seeks award of statutory damages for each violation of Section 1202 of the DMCA in the sum of $25,000.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendant, and awarding plaintiff as follows:

1.      restitution of defendant's unlawful proceeds in excess of plaintiff's compensatory damages;

8

2.    compensatory damages in an amount to be ascertained at trial;

3.    statutory damages to plaintiff according to proof, including but not limited to all penalties authorized by the Copyright Act (17 U.S.C. §§ 504(c)(1), 504(c)(2));

4.    an award of statutory damages for each violation by defendant of the DMCA, 17 U.S.C. § 1202;

5.    reasonable attorneys' fees and costs (17 U.S.C. § 505);

6.    pre- and post-judgment interest to the extent allowable; and,

7.    such other and further relief that the Court may deem just and proper.

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: August 22, 2021          **GARBARINI FITZGERALD P.C.**
       New York, New York

By:_____
     Richard M. Garbarini (RG 5496)

9

Case 1:21-cv-04727-ARR-RER   Document 8-3   Filed 10/12/21   Page 13 of 75 PageID #: 0

# Exhibit 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## SR 713-297

**Effective date of
registration:**

October 5, 2012

---

## Title

Title of Work: Starscapes (Ambient)

## Completion/Publication

Year of Completion: 2009

Date of 1st Publication: August 15, 2009    Nation of 1st Publication: United States

## Author

* Author: John Keith Emanuele

Author Created: sound recording, performance, production, music

Citizen of: United States    Domiciled in: United States

* Author: Richard Thomas Cupolo

Author Created: sound recording, performance, production, music

Citizen of: United States    Domiciled in: United States

## Copyright claimant

Copyright Claimant: Yesh Music LLC

75-10 197 Street, 2nd Floor, Flushing, NY, 11366, United States

Transfer Statement: By written agreement

## Limitation of copyright claim

Material excluded from this claim: previously published music, keyboards

New material included in claim: additional music; sound recording

## Rights and Permissions

Organization Name: Yesh Music LLC

Name: John Keith Emanuele

Email: americandollarband@yahoo.com    Telephone: 646-552-3011

Address: 75-10 197 Street

2nd Floor

Flushing, NY 11366 United States

# COPYRIGHT ASSIGNMENT AGREEMENT

Author 1:     Richard Thomas Cupolo
Address 1:    15 Middleton Rd., Garden City, New York

Author 2:     John Keith Emanuele
Address 2:    75-10 197th St., Flushing, New York

Assignee:     Yesh Music LLC
Address:      75-10 197th St., Flushing, New York

        FOR GOOD AND VALUABLE CONSIDERATION, receipt and sufficiency of which is hereby acknowledged, Authors hereby transfer and assign to Yesh Music LLC (hereafter "YESH"), located at 75-10 197th St., Flushing, New York, and to YESH's successors and assigns in perpetuity, One Hundred Percent (100%) of the entire right, title and interest in and to:

1. the copyright to Authors' contributions (hereafter referred to as the "Contributions" and which is more specifically defined below) to the below works (hereafter, "the Works");

> AGE OF WONDER
> AGE OF WONDER (AMBIENT)
> ANYTHING YOU SYNTHESIZE (AMBIENT)
> ANYTHING YOU SYNTHESIZE
> AS WE FLOAT
> AS WE FLOAT (AMBIENT)
> BUMP (AMBIENT)
> BUMP
> CALL
> CAMBIAN
> CHASE
> CHILLPOINT BREAK
> CIRCUITS
> CIRCUITS (AMBIENT)
> CLONES
> CROSSING ASIA
> CROSSING ASIA (AMBIENT)
> DAYTRIP
> DEA (AMBIENT)
> DEA
> EQUINOX
> EQUINOX (AMBIENT)
> ESCAPIST
> ETHER CHANNELS
> ETHER CHANNELS (AMBIENT)
> EVERYONE GETS SHOT
> FACES IN THE HAZE

*RICHARD THOMAS CUPOLO and JOHN KEITH EMANUELE to YESH MUSIC LLC*

FACES IN THE HAZE (AMBIENT)
FACES IN THE HAZE (FILM EDIT)
FADE IN OUT
FADE IN OUT (AMBIENT)
FAR ADRIFT
A FEW WORDS
A FEW WORDS (AMBIENT)
FIRST DAY
FIRST DAY (AMBIENT)
FLOOD
FLOOD (AMBIENT)
FRIENDS OF FRIENDS
FRIENDS OF FRIENDS (AMBIENT)
FRONTIER MELT
GLOW
HEAVY EYES IGNITE
HEAVY EYES IGNITE (AMBIENT)
INTERMISSION
INTRO
LANDING (AMBIENT)
LANDING
LIGHTS DIM (AMBIENT)
LIGHTS DIM
A LONG GOODBYE
LONG MARCH
NEAR EAST (AMBIENT)
NEAR EAST
OIL AND WATER
OIL AND WATER (AMBIENT)
ORACLE
ORACLE (AMBIENT)
OUR HEARTS ARE READ
PALESTINE
PAR AVION
PAR AVION (AMBIENT)
PETERSON
RAIDED BY WAVES
RED LETTER
RED LETTER (AMBIENT)
RUDIMENTS OF A SPIRITUAL LIFE (AMBIENT)
RUDIMENTS OF A SPIRITUAL LIFE
SANDS
SCHIPOL
SECOND SIGHT
SECOND SIGHT (AMBIENT)
SEPARATE BUT EQUAL

*RICHARD THOMAS CUPOLO and JOHN KEITH EMANUELE to YESH MUSIC LLC*

SHADOWS
SHADOWS (AMBIENT)
SIGNALING THROUGH THE FLAMES (AMBIENT)
SIGNALING THROUGH THE FLAMES
SIGNALING THROUGH THE FLAMES (FILM EDIT)
THE SLOW WAIT (PART ONE)
THE SLOW WAIT (PART TWO)
THE SLOW WAIT (PART ONE) (AMBIENT)
THE SLOW WAIT (PART TWO) (AMBIENT)
SOMNAMBULANCE
STARSCAPES (AMBIENT)
STARSCAPES
STEELTOWN (AMBIENT)
STEELTOWN (PART ONE)
STEELTOWN (PART TWO)
STRINGS
STRINGS (AMBIENT)
SUMMER OF WAR
SUPERNOVA LANDSLIDE
THE SWAMP
THE TECHNICOLOUR SLEEP
THOMPSON
TIME (AMBIENT)
TIME
TIME (FILM EDIT)
TONIGHT, LET'S ALL MAKE LOVE IN LONDON
TRANSCENDENCE (AMBIENT)
TRANSCENDENCE
TWELVE DAYS AWAKE
UNDERGROUND
URBANA
URBANA (AMBIENT)
WAR ON CHRISTMAS
WE'RE HITTING EVERYTHING (AMBIENT)
WE'RE HITTING EVERYTHING
WHERE WE ARE (AMBIENT)
WHERE WE ARE

2. the Authors' interest in and to the below Copyright Registrations, along with any renewals and extensions thereof, relating to the Contributions or the Works;

| COPYRIGHT REG. NO. | TITLE OF COPYRIGHTED WORK |
|---|---|
| SR 713-231 | AGE OF WONDER |
| SR 713-737 | AGE OF WONDER (AMBIENT) |
| SR 713-314 | ANYTHING YOU SYNTHESIZE (AMBIENT) |
| SR 713-287 | ANYTHING YOU SYNTHESIZE |

Copyright Assignment                                                                                p. 4 of 7

*RICHARD THOMAS CUPOLO and JOHN KEITH EMANUELE to YESH MUSIC LLC*

| | |
|---|---|
| SR 708-480 | AS WE FLOAT |
| SR 708-466 | AS WE FLOAT (AMBIENT) |
| SR 713-301 | BUMP (AMBIENT) |
| SR 713-282 | BUMP |
| SR 713-281 | CALL |
| SR 708-510 | CAMBIAN |
| SR 713-291 | CHASE |
| SR 708-528 | CHILLPOINT BREAK |
| SR 713-237 | CIRCUITS |
| SR 713-745 | CIRCUITS (AMBIENT) |
| SR 713-238 | CLONES |
| SR 708-486 | CROSSING ASIA |
| SR 708-465 | CROSSING ASIA (AMBIENT) |
| SR 708-497 | DAYTRIP |
| SR 713-303 | DEA (AMBIENT) |
| SR 713-226 | DEA |
| SR 713-239 | EQUINOX |
| SR 713-747 | EQUINOX (AMBIENT) |
| SR 713-278 | ESCAPIST |
| SR 708-489 | ETHER CHANNELS |
| SR 708-538 | ETHER CHANNELS (AMBIENT) |
| SR 708-504 | EVERYONE GETS SHOT |
| SR 708-492 | FACES IN THE HAZE |
| SR 708-494 | FACES IN THE HAZE (AMBIENT) |
| SR 708-458 | FACES IN THE HAZE (FILM EDIT) |
| SR 713-232 | FADE IN OUT |
| SR 713-739 | FADE IN OUT (AMBIENT) |
| SR 708-460 | FAR ADRIFT |
| SR 713-230 | A FEW WORDS |
| SR 713-735 | A FEW WORDS (AMBIENT) |
| SR 708-490 | FIRST DAY |
| SR 708-540 | FIRST DAY (AMBIENT) |
| SR 713-277 | FLOOD |
| SR 713-752 | FLOOD (AMBIENT) |
| SR 708-477 | FRIENDS OF FRIENDS |
| SR 708-463 | FRIENDS OF FRIENDS (AMBIENT) |
| SR 713-276 | FRONTIER MELT |
| SR 708-511 | GLOW |
| SR 708-491 | HEAVY EYES IGNITE |
| SR 708-473 | HEAVY EYES IGNITE (AMBIENT) |
| SR 713-283 | INTERMISSION |
| SR 713-290 | INTRO |
| SR 713-756 | LANDING (AMBIENT) |
| SR 708-547 | LANDING |
| SR 713-321 | LIGHTS DIM (AMBIENT) |

*RICHARD THOMAS CUPOLO and JOHN KEITH EMANUELE to YESH MUSIC LLC*

| SR 713-284 | LIGHTS DIM |
| SR 713-763 | A LONG GOODBYE |
| SR 713-217 | LONG MARCH |
| SR 713-755 | NEAR EAST (AMBIENT) |
| SR 713-764 | NEAR EAST |
| SR 713-234 | OIL AND WATER |
| SR 713-743 | OIL AND WATER (AMBIENT) |
| SR 708-475 | ORACLE |
| SR 708-467 | ORACLE (AMBIENT) |
| SR 713-286 | OUR HEARTS ARE READ |
| SR 713-228 | PALESTINE |
| SR 708-493 | PAR AVION |
| SR 708-470 | PAR AVION (AMBIENT) |
| SR 713-220 | PETERSON |
| SR 713-227 | RAIDED BY WAVES |
| SR 713-235 | RED LETTER |
| SR 713-746 | RED LETTER (AMBIENT) |
| SR 713-307 | RUDIMENTS OF A SPIRITUAL LIFE (AMBIENT) |
| SR 708-503 | RUDIMENTS OF A SPIRITUAL LIFE |
| SR 708-461 | SANDS |
| SR 708-548 | SCHIPOL |
| SR 713-241 | SECOND SIGHT |
| SR 713-749 | SECOND SIGHT (AMBIENT) |
| SR 713-218 | SEPARATE BUT EQUAL |
| SR 713-233 | SHADOWS |
| SR 713-740 | SHADOWS (AMBIENT) |
| SR 713-308 | SIGNALING THROUGH THE FLAMES (AMBIENT) |
| SR 708-500 | SIGNALING THROUGH THE FLAMES |
| SR 713-318 | SIGNALING THROUGH THE FLAMES (FILM EDIT) |
| SR 713-279 | THE SLOW WAIT (PART ONE) |
| SR 713-280 | THE SLOW WAIT (PART TWO) |
| SR 713-311 | THE SLOW WAIT (PART ONE) (AMBIENT) |
| SR 713-313 | THE SLOW WAIT (PART TWO) (AMBIENT) |
| SR 708-508 | SOMNAMBULANCE |
| SR 713-297 | STARSCAPES (AMBIENT) |
| SR 713-289 | STARSCAPES |
| SR 708-541 | STEELTOWN (AMBIENT) |
| SR 708-536 | STEELTOWN (PART ONE) |
| SR 708-488 | STEELTOWN (PART TWO) |
| SR 708-487 | STRINGS |
| SR 708-472 | STRINGS (AMBIENT) |
| SR 713-225 | SUMMER OF WAR |
| SR 713-223 | SUPERNOVA LANDSLIDE |
| SR 713-222 | THE SWAMP |
| SR 708-501 | THE TECHNICOLOUR SLEEP |

*RICHARD THOMAS CUPOLO and JOHN KEITH EMANUELE to YESH MUSIC LLC*

| | |
|---|---|
| SR 713-221 | THOMPSON |
| SR 713-315 | TIME (AMBIENT) |
| SR 713-225 | TIME |
| SR 713-319 | TIME (FILM EDIT) |
| SR 708-499 | TONIGHT, LET'S ALL MAKE LOVE IN LONDON |
| SR 713-316 | TRANSCENDENCE (AMBIENT) |
| SR 713-285 | TRANSCENDENCE |
| SR 708-514 | TWELVE DAYS AWAKE |
| SR 708-457 | UNDERGROUND |
| SR 708-478 | URBANA |
| SR 708-464 | URBANA (AMBIENT) |
| SR 708-513 | WAR ON CHRISTMAS |
| SR 713-305 | WE'RE HITTING EVERYTHING (AMBIENT) |
| SR 713-288 | WE'RE HITTING EVERYTHING |
| SR 713-759 | WHERE WE ARE (AMBIENT) |
| SR 708-549 | WHERE WE ARE |

3.   any copyright applications presently pending at the time of execution of this agreement and any resulting registrations therefrom;

4.   all works based upon, derived from, or incorporating the Contributions;

5.   all income, royalties, damages, claims and payments now or hereafter due or payable with respect to the Contributions or the Works;

6.   all causes of action, either in law or in equity, for past, present, or future infringement of copyright related to the Works, and

7.   all rights corresponding to any of the foregoing, throughout the world.

The Authors' Contributions consists of authorship of the Works, including music, lyrics, recording production, sound recordings, performance rights and any and all other authorship interests of any kind, now vested and contingent therein.

This Assignment includes the assignment of all rights, including copyright, to any modifications or other alterations to the Works or the Contributions that the Authors make under this Agreement or any other agreement between the Authors and YESH.

*Copyright Assignment*                                                                                           *p. 7 of 7*

*RICHARD THOMAS CUPOLO and JOHN KEITH EMANUELE to YESH MUSIC LLC*

IN WITNESS THEREOF, Authors duly execute this Agreement.

By: _____          By: _____
Richard Thomas Cupolo ("Author 1")     John Keith Emanuele ("Author 2")

3/13/13                                 3/13/13
_____               _____
Date                                    Date

STATE OF NEW YORK       )               STATE OF NEW YORK       )
                        ) SS.:                                  ) SS.:
COUNTY OF _Nassau_      )               COUNTY OF _Nassau_      )

Before me on this _13_ day of _March_, 20_13_,   Before me on this _13_ day of _March_, 20_13_,
personally appeared Richard Thomas Cupolo,       personally appeared John Keith Emanuele, to
to me known to be the person who is described    me known to be the person who is described in
in and who executed the foregoing assignment     and who executed the foregoing assignment
instrument and acknowledged to me that he        instrument and acknowledged to me that he
executed the same of his own free will for the   executed the same of his own free will for the
purpose therein express.                         purpose therein express.

_____               _____
NOTARY PUBLIC                           NOTARY PUBLIC

NICHOLAS CASTORO                        NICHOLAS CASTORO
Notary Public - State of New York       Notary Public - State of New York
NO. 01CA6268666                         NO. 01CA6268666
Qualified in Suffolk County             Qualified in Suffolk County
My Commission Expires _9/7/16_          My Commission Expires _7/7/16_

Case 1:21-cv-04727-ARR-RER   Document 8-3   Filed 10/12/21   Page 22 of 75 PageID
Case 1:21-cv-04727-ARR-RER   Document 1-1   Filed 08/22/21   Page 10 of 36 PageID #: 19
#: 174

# COPYRIGHT ASSIGNMENT

Claimant: Yesh Music LLC

Address: 15 Middleton Rd., Garden City, New York

FOR GOOD AND VALUABLE CONSIDERATION, receipt and sufficiency of which is hereby acknowledged, Claimant hereby transfers and assigns to Richard Thomas Cupolo and John Keith Emanuele (hereafter "Authors"), and to Authors' successors and assigns in perpetuity, One Hundred Percent (100%) of the entire right, title and interest in and to:

1. the entire copyright to the below works (hereafter, "the Works");

A LONG GOODBYE – SELF-TITLED ALBUM BONUS TRACK
A MEMORY STREAM
AMBIENT ONE
AMBIENT TWO
AMBIENT THREE
ATLAS
AWAKE IN THE CITY
BSIDES
FROM THE INLAND SEA
LIVE IN BROOKLYN
NEAR EAST – ATLAS BONUS TRACK
THE AMERICAN DOLLAR
THE TECHNICOLOUR SLEEP
4 BC
CHILL KINGDOM
WUDAO
LOST SYMPHONY
HIGH SUNSET
LOOKING UP, WE DANCED
GUIDED BY THE GLOWING SEA
CAROUSEL
PATH OF TOTALITY
THUNDER RISING
A SERIOUS QUESTION
A MOMENT BETWEEN US
EVERYTHING
UP
ACROBATS
DISTANCE TO GIBRALTAR
DREAMSCAPE
EYES CLOSING
FALLS
GHOSTS
MIND DRIFTING
MOSAIC
NEIGHBORHOOD

PARAGON
PAUSE
SEA OF ROSES
UNDER A WARM RAIN, ET AL. (LOFI DIMENSIONS)
VONDELPARK (NOON)
VONDELPARK (NIGHT)
WAKE UP SUMMER
AGE OF WONDER
AGE OF WONDER (AMBIENT)
ANYTHING YOU SYNTHESIZE (AMBIENT)
ANYTHING YOU SYNTHESIZE
AS WE FLOAT
AS WE FLOAT (AMBIENT)
BUMP (AMBIENT)
BUMP
CALL
CAMBIAN
CHASE
CHILLPOINT BREAK
CIRCUITS
CIRCUITS (AMBIENT)
CLONES
CROSSING ASIA
CROSSING ASIA (AMBIENT)
DAYTRIP
DEA (AMBIENT)
DEA
EQUINOX
EQUINOX (AMBIENT)
ESCAPIST
ETHER CHANNELS
ETHER CHANNELS (AMBIENT)
EVERYONE GETS SHOT
FACES IN THE HAZE
FACES IN THE HAZE (AMBIENT)
FACES IN THE HAZE (FILM EDIT)
FADE IN OUT
FADE IN OUT (AMBIENT)
FAR ADRIFT
A FEW WORDS
A FEW WORDS (AMBIENT)
FIRST DAY
FIRST DAY (AMBIENT)
FLOOD
FLOOD (AMBIENT)
FRIENDS OF FRIENDS

FRIENDS OF FRIENDS (AMBIENT)
FRONTIER MELT
GLOW
HEAVY EYES IGNITE
HEAVY EYES IGNITE (AMBIENT)
INTERMISSION
INTRO
LANDING (AMBIENT)
LANDING
LIGHTS DIM (AMBIENT)
LIGHTS DIM
A LONG GOODBYE
LONG MARCH
NEAR EAST (AMBIENT)
NEAR EAST
OIL AND WATER
OIL AND WATER (AMBIENT)
ORACLE
ORACLE (AMBIENT)
OUR HEARTS ARE READ
PALESTINE
PAR AVION
PAR AVION (AMBIENT)
PETERSON
RAIDED BY WAVES
RED LETTER
RED LETTER (AMBIENT)
RUDIMENTS OF A SPIRITUAL LIFE (AMBIENT)
RUDIMENTS OF A SPIRITUAL LIFE
SANDS
SCHIPOL
SECOND SIGHT
SECOND SIGHT (AMBIENT)
SEPARATE BUT EQUAL
SHADOWS
SHADOWS (AMBIENT)
SIGNALING THROUGH THE FLAMES (AMBIENT)
SIGNALING THROUGH THE FLAMES
SIGNALING THROUGH THE FLAMES (FILM EDIT)
THE SLOW WAIT (PART ONE)
THE SLOW WAIT (PART TWO)
THE SLOW WAIT (PART ONE) (AMBIENT)
THE SLOW WAIT (PART TWO) (AMBIENT)
SOMNAMBULANCE
STARSCAPES (AMBIENT)
STARSCAPES

STEELTOWN (AMBIENT)
STEELTOWN (PART ONE)
STEELTOWN (PART TWO)
STRINGS
STRINGS (AMBIENT)
SUMMER OF WAR
SUPERNOVA LANDSLIDE
THE SWAMP
THE TECHNICOLOUR SLEEP
THOMPSON
TIME (AMBIENT)
TIME
TIME (FILM EDIT)
TONIGHT, LET'S ALL MAKE LOVE IN LONDON
TRANSCENDENCE (AMBIENT)
TRANSCENDENCE
TWELVE DAYS AWAKE
UNDERGROUND
URBANA
URBANA (AMBIENT)
WAR ON CHRISTMAS
WE'RE HITTING EVERYTHING (AMBIENT)
WE'RE HITTING EVERYTHING
WHERE WE ARE (AMBIENT)
WHERE WE ARE
MIRROR VOYAGE
COSMIC WAVE
LOFI DIMENSIONS 2

2. the Claimant's interest in and to the below Copyright Registrations, along with any renewals and extensions thereof, relating to the Works;

| COPYRIGHT REG. NO. | TITLE OF COPYRIGHTED WORK |
|---|---|
| PAu 3-452-712 | A MEMORY STREAM |
| SR 677-648 | AMBIENT ONE |
| SR 679-263 | AMBIENT TWO |
| SRu 1-084-375 | AMBIENT THREE |
| SR 677-194 | ATLAS |
| SR 677-647 | FROM THE INLAND SEA |
| SR 677-646 | LIVE IN BROOKLYN |
| PA 1-306-744 | THE AMERICAN DOLLAR |
| PA 1-346-426 | THE TECHNICOLOUR SLEEP |
| SRu 1-278-417 | 4 BC |
| SR 795-327 | CHILL KINGDOM |

_Copyright Assignment_                                                                                          _p. 5 of 9_

| | |
|---|---|
| SR 796-458 | WUDAO |
| SR 798-499 | LOST SYMPHONY |
| SR 801-234 | HIGH SUNSET |
| SR 803-421 | LOOKING UP, WE DANCED |
| SR 804-344 | GUIDED BY THE GLOWING SEA |
| SR 806-312 | CAROUSEL |
| SR 808-109 | PATH OF TOTALITY |
| SR 808-786 | THUNDER RISING |
| SR 809-389 | A SERIOUS QUESTION |
| SR 810-547 | A MOMENT BETWEEN US |
| SR 811-469 | EVERYTHING |
| SR 813-285 | UP |
| SRu 1232326 | ACROBATS |
| SRu 1232320 | DISTANCE TO GIBRALTAR |
| SR 848018 | DREAMSCAPE |
| SR 848013 | EYES CLOSING |
| SRu 1232318 | FALLS |
| SRu 1232312 | GHOSTS |
| SR 848014 | MIND DRIFTING |
| SRu 1232321 | MOSAIC |
| SRu 1232324 | NEIGHBORHOOD |
| SRu 1232323 | PARAGON |
| SRu 1232311 | PAUSE |
| SRu 1417220 | SEA OF ROSES |
| SR 870953 | UNDER A WARM RAIN, ET AL. |
| SRu 1232329 | VONDELPARK (NOON) |
| SRu 1232331 | VONDELPARK (NIGHT) |
| SRu 1232314 | WAKE UP SUMMER |
| SR 713-231 | AGE OF WONDER |
| SR 713-737 | AGE OF WONDER (AMBIENT) |
| SR 713-314 | ANYTHING YOU SYNTHESIZE (AMBIENT) |
| SR 713-287 | ANYTHING YOU SYNTHESIZE |
| SR 708-480 | AS WE FLOAT |
| SR 708-466 | AS WE FLOAT (AMBIENT) |
| SR 713-301 | BUMP (AMBIENT) |
| SR 713-282 | BUMP |
| SR 713-281 | CALL |
| SR 708-510 | CAMBIAN |
| SR 713-291 | CHASE |

| SR 708-528 | CHILLPOINT BREAK |
|---|---|
| SR 713-237 | CIRCUITS |
| SR 713-745 | CIRCUITS (AMBIENT) |
| SR 713-238 | CLONES |
| SR 708-486 | CROSSING ASIA |
| SR 708-465 | CROSSING ASIA (AMBIENT) |
| SR 708-497 | DAYTRIP |
| SR 713-303 | DEA (AMBIENT) |
| SR 713-226 | DEA |
| SR 713-239 | EQUINOX |
| SR 713-747 | EQUINOX (AMBIENT) |
| SR 713-278 | ESCAPIST |
| SR 708-489 | ETHER CHANNELS |
| SR 708-538 | ETHER CHANNELS (AMBIENT) |
| SR 708-504 | EVERYONE GETS SHOT |
| SR 708-492 | FACES IN THE HAZE |
| SR 708-494 | FACES IN THE HAZE (AMBIENT) |
| SR 708-458 | FACES IN THE HAZE (FILM EDIT) |
| SR 713-232 | FADE IN OUT |
| SR 713-739 | FADE IN OUT (AMBIENT) |
| SR 708-460 | FAR ADRIFT |
| SR 713-230 | A FEW WORDS |
| SR 713-735 | A FEW WORDS (AMBIENT) |
| SR 708-490 | FIRST DAY |
| SR 708-540 | FIRST DAY (AMBIENT) |
| SR 713-277 | FLOOD |
| SR 713-752 | FLOOD (AMBIENT) |
| SR 708-477 | FRIENDS OF FRIENDS |
| SR 708-463 | FRIENDS OF FRIENDS (AMBIENT) |
| SR 713-276 | FRONTIER MELT |
| SR 708-511 | GLOW |
| SR 708-491 | HEAVY EYES IGNITE |
| SR 708-473 | HEAVY EYES IGNITE (AMBIENT) |
| SR 713-283 | INTERMISSION |
| SR 713-290 | INTRO |
| SR 713-756 | LANDING (AMBIENT) |
| SR 708-547 | LANDING |
| SR 713-321 | LIGHTS DIM (AMBIENT) |
| SR 713-284 | LIGHTS DIM |
| SR 713-763 | A LONG GOODBYE |

| SR 713-217 | LONG MARCH |
|---|---|
| SR 713-755 | NEAR EAST (AMBIENT) |
| SR 713-764 | NEAR EAST |
| SR 713-234 | OIL AND WATER |
| SR 713-743 | OIL AND WATER (AMBIENT) |
| SR 708-475 | ORACLE |
| SR 708-467 | ORACLE (AMBIENT) |
| SR 713-286 | OUR HEARTS ARE READ |
| SR 713-228 | PALESTINE |
| SR 708-493 | PAR AVION |
| SR 708-470 | PAR AVION (AMBIENT) |
| SR 713-220 | PETERSON |
| SR 713-227 | RAIDED BY WAVES |
| SR 713-235 | RED LETTER |
| SR 713-746 | RED LETTER (AMBIENT) |
| SR 713-307 | RUDIMENTS OF A SPIRITUAL LIFE (AMBIENT) |
| SR 708-503 | RUDIMENTS OF A SPIRITUAL LIFE |
| SR 708-461 | SANDS |
| SR 708-548 | SCHIPOL |
| SR 713-241 | SECOND SIGHT |
| SR 713-749 | SECOND SIGHT (AMBIENT) |
| SR 713-218 | SEPARATE BUT EQUAL |
| SR 713-233 | SHADOWS |
| SR 713-740 | SHADOWS (AMBIENT) |
| SR 713-308 | SIGNALING THROUGH THE FLAMES (AMBIENT) |
| SR 708-500 | SIGNALING THROUGH THE FLAMES |
| SR 713-318 | SIGNALING THROUGH THE FLAMES (FILM EDIT) |
| SR 713-279 | THE SLOW WAIT (PART ONE) |
| SR 713-280 | THE SLOW WAIT (PART TWO) |
| SR 713-311 | THE SLOW WAIT (PART ONE) (AMBIENT) |
| SR 713-313 | THE SLOW WAIT (PART TWO) (AMBIENT) |
| SR 708-508 | SOMNAMBULANCE |
| SR 713-297 | STARSCAPES (AMBIENT) |
| SR 713-289 | STARSCAPES |
| SR 708-541 | STEELTOWN (AMBIENT) |
| SR 708-536 | STEELTOWN (PART ONE) |

_Copyright Assignment_                                                                    _p. 8 of 9_

| | |
|---|---|
| SR 708-488 | STEELTOWN (PART TWO) |
| SR 708-487 | STRINGS |
| SR 708-472 | STRINGS (AMBIENT) |
| SR 713-225 | SUMMER OF WAR |
| SR 713-223 | SUPERNOVA LANDSLIDE |
| SR 713-222 | THE SWAMP |
| SR 708-501 | THE TECHNICOLOUR SLEEP |
| SR 713-221 | THOMPSON |
| SR 713-315 | TIME (AMBIENT) |
| SR 713-225 | TIME |
| SR 713-319 | TIME (FILM EDIT) |
| SR 708-499 | TONIGHT, LET'S ALL MAKE LOVE IN LONDON |
| SR 713-316 | TRANSCENDENCE (AMBIENT) |
| SR 713-285 | TRANSCENDENCE |
| SR 708-514 | TWELVE DAYS AWAKE |
| SR 708-457 | UNDERGROUND |
| SR 708-478 | URBANA |
| SR 708-464 | URBANA (AMBIENT) |
| SR 708-513 | WAR ON CHRISTMAS |
| SR 713-305 | WE'RE HITTING EVERYTHING (AMBIENT) |
| SR 713-288 | WE'RE HITTING EVERYTHING |
| SR 713-759 | WHERE WE ARE (AMBIENT) |
| SR 708-549 | WHERE WE ARE |
| SR0000893216 | MIRROR VOYAGE |
| SR0000886380 | COSMIC WAVE |
| SR0000888981 | LOFI DIMENSIONS 2 |

3.  any copyright applications presently pending at the time of execution of this agreement and any resulting registrations therefrom;

4.  all works based upon, derived from, or incorporating the Works;

5.  all income, royalties, damages, claims and payments now or hereafter due or payable with respect to the Works;

6.  all causes of action, either in law or in equity, for past, present, or future infringement of copyright related to the Works, and

7.  all rights corresponding to any of the foregoing, throughout the world.

      All authorship of the Works, including music, lyrics, recording production, sound recordings, performance rights and any and all other authorship interests of any kind are hereby transferred to the Authors.

      This Assignment includes the assignment of all rights, including copyright, to any modifications or other alterations to the Works that the Claimant makes under this Agreement or any other agreement between Claimant and the Authors.

IN WITNESS THEREOF, Claimant duly executes this Agreement.

By:_____

Richard Thomas Cupolo on behalf of Claimant

_____3/29/21_____

Date

STATE OF FLORIDA     )

                    ) SS.:

COUNTY OF __Polk__ )

Before me on this 29 day of __March__, 2021 personally appeared Richard Thomas Cupolo, to me known to be the person who is described in and who executed the foregoing assignment instrument and acknowledged to me that he executed the same of his own free will for the purpose therein express.

_____

NOTARY PUBLIC

**JEROME FERGUSON**
Notary Public - State of Florida
Commission # HH 038209
My Comm. Expires Sep 22, 2024

# COPYRIGHT ASSIGNMENT

Author: Richard Thomas Cupolo

Address: 2812 Hickory Ridge Dr., Lakeland, FL.

FOR GOOD AND VALUABLE CONSIDERATION, receipt and sufficiency of which is hereby acknowledged, Author hereby transfers and assigns to Charming Beats LLC (hereafter "Company"), located at 2812 Hickory Ridge Dr., Lakeland, FL, and to Company's successors and assigns in perpetuity, One Hundred Percent (100%) of the entire right, title and interest in and to:

1.  the copyright to Author's contribution (hereafter referred to as the "Contribution" and which is more specifically defined below) to the below works (hereafter, "the Works"):

> A LONG GOODBYE – SELF-TITLED ALBUM BONUS TRACK
> A MEMORY STREAM
> AMBIENT ONE
> AMBIENT TWO
> AMBIENT THREE
> ATLAS
> AWAKE IN THE CITY
> BSIDES
> FROM THE INLAND SEA
> LIVE IN BROOKLYN
> NEAR EAST – ATLAS BONUS TRACK
> THE AMERICAN DOLLAR
> THE TECHNICOLOUR SLEEP
> 4 BC
> CHILL KINGDOM
> WUDAO
> LOST SYMPHONY
> HIGH SUNSET
> LOOKING UP, WE DANCED
> GUIDED BY THE GLOWING SEA
> CAROUSEL
> PATH OF TOTALITY
> THUNDER RISING
> A SERIOUS QUESTION
> A MOMENT BETWEEN US
> EVERYTHING
> UP
> ACROBATS
> DISTANCE TO GIBRALTAR
> DREAMSCAPE
> EYES CLOSING
> FALLS
> GHOSTS
> MIND DRIFTING

Case 1:21-cv-04727-ARR-RER    Document 8-3    Filed 10/12/21    Page 32 of 75 PageID
Case 1:21-cv-04727-ARR-RER    Document 1-1    Filed 08/22/21    Page 20 of 36 PageID #: 29
#: 184

MOSAIC
NEIGHBORHOOD
PARAGON
PAUSE
SEA OF ROSES
UNDER A WARM RAIN, ET AL. (LOFI DIMENSIONS)
VONDELPARK (NOON)
VONDELPARK (NIGHT)
WAKE UP SUMMER
AGE OF WONDER
AGE OF WONDER (AMBIENT)
ANYTHING YOU SYNTHESIZE (AMBIENT)
ANYTHING YOU SYNTHESIZE
AS WE FLOAT
AS WE FLOAT (AMBIENT)
BUMP (AMBIENT)
BUMP
CALL
CAMBIAN
CHASE
CHILLPOINT BREAK
CIRCUITS
CIRCUITS (AMBIENT)
CLONES
CROSSING ASIA
CROSSING ASIA (AMBIENT)
DAYTRIP
DEA (AMBIENT)
DEA
EQUINOX
EQUINOX (AMBIENT)
ESCAPIST
ETHER CHANNELS
ETHER CHANNELS (AMBIENT)
EVERYONE GETS SHOT
FACES IN THE HAZE
FACES IN THE HAZE (AMBIENT)
FACES IN THE HAZE (FILM EDIT)
FADE IN OUT
FADE IN OUT (AMBIENT)
FAR ADRIFT
A FEW WORDS
A FEW WORDS (AMBIENT)
FIRST DAY
FIRST DAY (AMBIENT)
FLOOD

Copyright Assignment                                                                                    p. 3 of 9

FLOOD (AMBIENT)
FRIENDS OF FRIENDS
FRIENDS OF FRIENDS (AMBIENT)
FRONTIER MELT
GLOW
HEAVY EYES IGNITE
HEAVY EYES IGNITE (AMBIENT)
INTERMISSION
INTRO
LANDING (AMBIENT)
LANDING
LIGHTS DIM (AMBIENT)
LIGHTS DIM
A LONG GOODBYE
LONG MARCH
NEAR EAST (AMBIENT)
NEAR EAST
OIL AND WATER
OIL AND WATER (AMBIENT)
ORACLE
ORACLE (AMBIENT)
OUR HEARTS ARE READ
PALESTINE
PAR AVION
PAR AVION (AMBIENT)
PETERSON
RAIDED BY WAVES
RED LETTER
RED LETTER (AMBIENT)
RUDIMENTS OF A SPIRITUAL LIFE (AMBIENT)
RUDIMENTS OF A SPIRITUAL LIFE
SANDS
SCHIPOL
SECOND SIGHT
SECOND SIGHT (AMBIENT)
SEPARATE BUT EQUAL
SHADOWS
SHADOWS (AMBIENT)
SIGNALING THROUGH THE FLAMES (AMBIENT)
SIGNALING THROUGH THE FLAMES
SIGNALING THROUGH THE FLAMES (FILM EDIT)
THE SLOW WAIT (PART ONE)
THE SLOW WAIT (PART TWO)
THE SLOW WAIT (PART ONE) (AMBIENT)
THE SLOW WAIT (PART TWO) (AMBIENT)

Copyright Assignment                                                                        p. 2 of 9

SOMNAMBULANCE
STARSCAPES (AMBIENT)
STARSCAPES
STEELTOWN (AMBIENT)
STEELTOWN (PART ONE)
STEELTOWN (PART TWO)
STRINGS
STRINGS (AMBIENT)
SUMMER OF WAR
SUPERNOVA LANDSLIDE
THE SWAMP
THE TECHNICOLOUR SLEEP
THOMPSON
TIME (AMBIENT)
TIME
TIME (FILM EDIT)
TONIGHT, LET'S ALL MAKE LOVE IN LONDON
TRANSCENDENCE (AMBIENT)
TRANSCENDENCE
TWELVE DAYS AWAKE
UNDERGROUND
URBANA
URBANA (AMBIENT)
WAR ON CHRISTMAS
WE'RE HITTING EVERYTHING (AMBIENT)
WE'RE HITTING EVERYTHING
WHERE WE ARE (AMBIENT)
WHERE WE ARE
MIRROR VOYAGE
COSMIC WAVE
LOFI DIMENSIONS 2

2.  the Author's interest in and to the below Copyright Registrations, along with any renewals and extensions thereof, relating to the Contribution or the Works:

| COPYRIGHT REG. NO. | TITLE OF COPYRIGHTED WORK |
|---|---|
| PAu 3-452-712 | A MEMORY STREAM |
| SR 677-648 | AMBIENT ONE |
| SR 679-263 | AMBIENT TWO |
| SRu 1-084-375 | AMBIENT THREE |
| SR 677-194 | ATLAS |
| SR 677-647 | FROM THE INLAND SEA |
| SR 677-646 | LIVE IN BROOKLYN |
| PA 1-306-744 | THE AMERICAN DOLLAR |
| PA 1-346-426 | THE TECHNICOLOUR SLEEP |
| SRu 1-278-417 | 4 BC |

Case 1:21-cv-04727-ARR-RER   Document 8-3   Filed 10/12/21   Page 35 of 75 PageID
Case 1:21-cv-04727-ARR-RER   Document 1-1   Filed 08/22/21   Page 23 of 36 PageID #: 32
#: 187

Copyright Assignment                                                                                        p. 5 of 9

| | |
|---|---|
| SR 795-327 | CHILL KINGDOM |
| SR 796-458 | WUDAO |
| SR 798-499 | LOST SYMPHONY |
| SR 801-234 | HIGH SUNSET |
| SR 803-421 | LOOKING UP, WE DANCED |
| SR 804-344 | GUIDED BY THE GLOWING SEA |
| SR 806-312 | CAROUSEL |
| SR 808-109 | PATH OF TOTALITY |
| SR 808-786 | THUNDER RISING |
| SR 809-389 | A SERIOUS QUESTION |
| SR 810-847 | A MOMENT BETWEEN US |
| SR 811-469 | EVERYTHING |
| SR 813-285 | UP |
| SRu 1232326 | ACROBATS |
| SRu 1232320 | DISTANCE TO GIBRALTAR |
| SR 848018 | DREAMSCAPE |
| SR 848013 | EYES CLOSING |
| SRu 1232318 | FALLS |
| SRu 1232312 | GHOSTS |
| SR 848014 | MIND DRIFTING |
| SRu 1232321 | MOSAIC |
| SRu 1232324 | NEIGHBORHOOD |
| SRu 1232323 | PARAGON |
| SRu 1232311 | PAUSE |
| SRu 1417220 | SEA OF ROSES |
| SR 870953 | UNDER A WARM RAIN, ET AL |
| SRu 1232329 | VONDELPARK (NOON) |
| SRu 1232331 | VONDELPARK (NIGHT) |
| SRu 1232314 | WAKE UP SUMMER |
| SR 713-234 | AGE OF WONDER |
| SR 713-737 | AGE OF WONDER (AMBIENT) |
| SR 713-314 | ANYTHING YOU SYNTHESIZE (AMBIENT) |
| SR 713-287 | ANYTHING YOU SYNTHESIZE |
| SR 708-480 | AS WE FLOAT |
| SR 708-466 | AS WE FLOAT (AMBIENT) |
| SR 713-301 | BUMP (AMBIENT) |
| SR 713-282 | BUMP |
| SR 713-281 | CALL |
| SR 708-510 | CAMBIAN |

Copyright Assignment                                                                    p. 6 of 7

| SR 713-291 | CHASE |
| SR 708-528 | CHILLPOINT BREAK |
| SR 713-237 | CIRCUITS |
| SR 713-745 | CIRCUITS (AMBIENT) |
| SR 713-238 | CLONES |
| SR 708-486 | CROSSING ASIA |
| SR 708-465 | CROSSING ASIA (AMBIENT) |
| SR 708-497 | DAYTRIP |
| SR 713-303 | DEA (AMBIENT) |
| SR 713-226 | DEA |
| SR 713-239 | EQUINOX |
| SR 713-747 | EQUINOX (AMBIENT) |
| SR 713-278 | ESCAPIST |
| SR 708-489 | ETHER CHANNELS |
| SR 708-538 | ETHER CHANNELS (AMBIENT) |
| SR 708-504 | EVERYONE GETS SHOT |
| SR 708-492 | FACES IN THE HAZE |
| SR 708-494 | FACES IN THE HAZE (AMBIENT) |
| SR 708-458 | FACES IN THE HAZE (FILM EDIT) |
| SR 713-232 | FADE IN OUT |
| SR 713-739 | FADE IN OUT (AMBIENT) |
| SR 708-460 | FAR ADRIFT |
| SR 713-230 | A FEW WORDS |
| SR 713-735 | A FEW WORDS (AMBIENT) |
| SR 708-490 | FIRST DAY |
| SR 708-540 | FIRST DAY (AMBIENT) |
| SR 713-277 | FLOOD |
| SR 713-752 | FLOOD (AMBIENT) |
| SR 708-477 | FRIENDS OF FRIENDS |
| SR 708-463 | FRIENDS OF FRIENDS (AMBIENT) |
| SR 713-276 | FRONTIER MELT |
| SR 708-511 | GLOW |
| SR 708-491 | HEAVY EYES IGNITE |
| SR 708-473 | HEAVY EYES IGNITE (AMBIENT) |
| SR 713-283 | INTERMISSION |
| SR 713-290 | INTRO |
| SR 713-756 | LANDING (AMBIENT) |
| SR 708-547 | LANDING |
| SR 713-321 | LIGHTS DIM (AMBIENT) |
| SR 713-284 | LIGHTS DIM |

Copyright Assignment                                                                    p. 2 of 3

| SR 713-763 | A LONG GOODBYE |
| SR 713-217 | LONG MARCH |
| SR 713-755 | NEAR EAST (AMBIENT) |
| SR 713-764 | NEAR EAST |
| SR 713-234 | OIL AND WATER |
| SR 713-743 | OIL AND WATER (AMBIENT) |
| SR 708-475 | ORACLE |
| SR 708-467 | ORACLE (AMBIENT) |
| SR 713-286 | OUR HEARTS ARE READ |
| SR 713-228 | PALESTINE |
| SR 708-493 | PAR AVION |
| SR 708-470 | PAR AVION (AMBIENT) |
| SR 713-220 | PETERSON |
| SR 713-227 | RAIDED BY WAVES |
| SR 713-235 | RED LETTER |
| SR 713-746 | RED LETTER (AMBIENT) |
| SR 713-307 | RUDIMENTS OF A SPIRITUAL LIFE (AMBIENT) |
| SR 708-503 | RUDIMENTS OF A SPIRITUAL LIFE |
| SR 708-461 | SANDS |
| SR 708-548 | SCHIPOL |
| SR 713-241 | SECOND SIGHT |
| SR 713-749 | SECOND SIGHT (AMBIENT) |
| SR 713-218 | SEPARATE BUT EQUAL |
| SR 713-233 | SHADOWS |
| SR 713-740 | SHADOWS (AMBIENT) |
| SR 713-308 | SIGNALING THROUGH THE FLAMES (AMBIENT) |
| SR 708-500 | SIGNALING THROUGH THE FLAMES |
| SR 713-318 | SIGNALING THROUGH THE FLAMES (FILM EDIT) |
| SR 713-279 | THE SLOW WAIT (PART ONE) |
| SR 713-280 | THE SLOW WAIT (PART TWO) |
| SR 713-311 | THE SLOW WAIT (PART ONE) (AMBIENT) |
| SR 713-313 | THE SLOW WAIT (PART TWO) (AMBIENT) |
| SR 708-508 | SOMNAMBULANCE |
| SR 713-297 | STARSCAPES (AMBIENT) |
| SR 713-289 | STARSCAPES |
| SR 708-541 | STEELTOWN (AMBIENT) |

Case 1:21-cv-04727-ARR-RER   Document 8-3   Filed 10/12/21   Page 38 of 75 PageID
Case 1:21-cv-04727-ARR-RER   Document 1-1   Filed 08/22/21   Page 26 of 36 PageID #: 35
#: 190

Copyright Assignment

| | |
|---|---|
| SR 708-536 | STEELTOWN (PART ONE) |
| SR 708-488 | STEELTOWN (PART TWO) |
| SR 708-487 | STRINGS |
| SR 708-472 | STRINGS (AMBIENT) |
| SR 713-225 | SUMMER OF WAR |
| SR 713-223 | SUPERNOVA LANDSLIDE |
| SR 713-222 | THE SWAMP |
| SR 708-501 | THE TECHNICOLOUR SLEEP |
| SR 713-221 | THOMPSON |
| SR 713-315 | TIME (AMBIENT) |
| SR 713-225 | TIME |
| SR 713-319 | TIME (FILM EDIT) |
| SR 708-499 | TONIGHT, LET'S ALL MAKE LOVE IN LONDON |
| SR 713-316 | TRANSCENDENCE (AMBIENT) |
| SR 713-285 | TRANSCENDENCE |
| SR 708-514 | TWELVE DAYS AWAKE |
| SR 708-457 | UNDERGROUND |
| SR 708-478 | URBANA |
| SR 708-464 | URBANA (AMBIENT) |
| SR 708-513 | WAR ON CHRISTMAS |
| SR 713-305 | WE'RE HITTING EVERYTHING (AMBIENT) |
| SR 713-288 | WE'RE HITTING EVERYTHING |
| SR 713-759 | WHERE WE ARE (AMBIENT) |
| SR 708-549 | WHERE WE ARE |
| SR0000893216 | MIRROR VOYAGE |
| SR0000886380 | COSMIC WAVE |
| SR0000888981 | LOFI DIMENSIONS 2 |

3. any copyright applications presently pending at the time of execution of this agreement and any resulting registrations therefrom;

4. all works based upon, derived from, or incorporating the Contribution;

5. all income, royalties, damages, claims and payments now or hereafter due or payable with respect to the Contribution or the Works;

6. all causes of action, either in law or in equity, for past, present, or future infringement of copyright related to the Works, and

Case 1:21-cv-04727-ARR-RER   Document 8-3   Filed 10/12/21   Page 39 of 75 PageID
Case 1:21-cv-04727-ARR-RER   Document 1-1   Filed 08/22/21   Page 27 of 36 PageID #: 36
#: 191

Copyright Assignment                                                                    p. 9 of 9

7.   all rights corresponding to any of the foregoing, throughout the world.

The Author's Contribution consists of authorship of the Works, including music, lyrics, recording production, sound recordings, performance rights and any and all other authorship interests of any kind, now vested and contingent therein. The other author of the Works is John Keith Emanuele.

This Assignment includes the assignment of all rights, including copyright, to any modifications or other alterations to the Works or the Contribution that the Author makes under this Agreement or any other agreement between the Author and Company.

IN WITNESS THEREOF, Author duly executes this Agreement.

By: _____
Richard Thomas Cupolo ("Author")

3/29/21
Date

STATE OF FLORIDA      )
                      ) SS.:
COUNTY OF __Polk__    )

Before me on this 29 day of March _____, 2021 personally appeared Richard Thomas Cupolo, to me known to be the person who is described in and who executed the foregoing assignment instrument and acknowledged to me that he executed the same of his own free will for the purpose therein express.

_____
NOTARY PUBLIC

JEROME FERGUSON
Notary Public - State of Florida
Commission # HH 038309
My Comm. Expires Sep 22, 2024

Case 1:21-cv-04727-ARR-RER   Document 8-3   Filed 10/12/21   Page 40 of 75 PageID
Case 1:21-cv-04727-ARR-RER   Document 1-1   Filed 08/22/21   Page 28 of 36 PageID #: 37
#: 192

# COPYRIGHT ASSIGNMENT

Author: John Keith Emanuele

Address: 75-10 197th St., Flushing, NY

FOR GOOD AND VALUABLE CONSIDERATION, receipt and sufficiency of which is hereby acknowledged, Author hereby transfers and assigns to Charming Beats LLC (hereafter "Company"), located at 2812 Hickory Ridge Dr., Lakeland, FL, and to Company's successors and assigns in perpetuity, One Hundred Percent (100%) of the entire right, title and interest in and to:

1.  the copyright to Author's contribution (hereafter referred to as the "Contribution" and which is more specifically defined below) to the below works (hereafter, "the Works");

A LONG GOODBYE – SELF-TITLED ALBUM BONUS TRACK
A MEMORY STREAM
AMBIENT ONE
AMBIENT TWO
AMBIENT THREE
ATLAS
AWAKE IN THE CITY
BSIDES
FROM THE INLAND SEA
LIVE IN BROOKLYN
NEAR EAST – ATLAS BONUS TRACK
THE AMERICAN DOLLAR
THE TECHNICOLOUR SLEEP
4 BC
CHILL KINGDOM
WUDAO
LOST SYMPHONY
HIGH SUNSET
LOOKING UP, WE DANCED
GUIDED BY THE GLOWING SEA
CAROUSEL
PATH OF TOTALITY
THUNDER RISING
A SERIOUS QUESTION
A MOMENT BETWEEN US
EVERYTHING
UP
ACROBATS
DISTANCE TO GIBRALTAR
DREAMSCAPE
EYES CLOSING
FALLS
GHOSTS
MIND DRIFTING

MOSAIC
NEIGHBORHOOD
PARAGON
PAUSE
SEA OF ROSES
UNDER A WARM RAIN, ET AL. (LOFI DIMENSIONS)
VONDELPARK (NOON)
VONDELPARK (NIGHT)
WAKE UP SUMMER
AGE OF WONDER
AGE OF WONDER (AMBIENT)
ANYTHING YOU SYNTHESIZE (AMBIENT)
ANYTHING YOU SYNTHESIZE
AS WE FLOAT
AS WE FLOAT (AMBIENT)
BUMP (AMBIENT)
BUMP
CALL
CAMBIAN
CHASE
CHILLPOINT BREAK
CIRCUITS
CIRCUITS (AMBIENT)
CLONES
CROSSING ASIA
CROSSING ASIA (AMBIENT)
DAYTRIP
DEA (AMBIENT)
DEA
EQUINOX
EQUINOX (AMBIENT)
ESCAPIST
ETHER CHANNELS
ETHER CHANNELS (AMBIENT)
EVERYONE GETS SHOT
FACES IN THE HAZE
FACES IN THE HAZE (AMBIENT)
FACES IN THE HAZE (FILM EDIT)
FADE IN OUT
FADE IN OUT (AMBIENT)
FAR ADRIFT
A FEW WORDS
A FEW WORDS (AMBIENT)
FIRST DAY
FIRST DAY (AMBIENT)
FLOOD

FLOOD (AMBIENT)
FRIENDS OF FRIENDS
FRIENDS OF FRIENDS (AMBIENT)
FRONTIER MELT
GLOW
HEAVY EYES IGNITE
HEAVY EYES IGNITE (AMBIENT)
INTERMISSION
INTRO
LANDING (AMBIENT)
LANDING
LIGHTS DIM (AMBIENT)
LIGHTS DIM
A LONG GOODBYE
LONG MARCH
NEAR EAST (AMBIENT)
NEAR EAST
OIL AND WATER
OIL AND WATER (AMBIENT)
ORACLE
ORACLE (AMBIENT)
OUR HEARTS ARE READ
PALESTINE
PAR AVION
PAR AVION (AMBIENT)
PETERSON
RAIDED BY WAVES
RED LETTER
RED LETTER (AMBIENT)
RUDIMENTS OF A SPIRITUAL LIFE (AMBIENT)
RUDIMENTS OF A SPIRITUAL LIFE
SANDS
SCHIPOL
SECOND SIGHT
SECOND SIGHT (AMBIENT)
SEPARATE BUT EQUAL
SHADOWS
SHADOWS (AMBIENT)
SIGNALING THROUGH THE FLAMES (AMBIENT)
SIGNALING THROUGH THE FLAMES
SIGNALING THROUGH THE FLAMES (FILM EDIT)
THE SLOW WAIT (PART ONE)
THE SLOW WAIT (PART TWO)
THE SLOW WAIT (PART ONE) (AMBIENT)
THE SLOW WAIT (PART TWO) (AMBIENT)

_Copyright Assignment_                                                                                    _p. 4 of 9_

SOMNAMBULANCE
STARSCAPES (AMBIENT)
STARSCAPES
STEELTOWN (AMBIENT)
STEELTOWN (PART ONE)
STEELTOWN (PART TWO)
STRINGS
STRINGS (AMBIENT)
SUMMER OF WAR
SUPERNOVA LANDSLIDE
THE SWAMP
THE TECHNICOLOUR SLEEP
THOMPSON
TIME (AMBIENT)
TIME
TIME (FILM EDIT)
TONIGHT, LET'S ALL MAKE LOVE IN LONDON
TRANSCENDENCE (AMBIENT)
TRANSCENDENCE
TWELVE DAYS AWAKE
UNDERGROUND
URBANA
URBANA (AMBIENT)
WAR ON CHRISTMAS
WE'RE HITTING EVERYTHING (AMBIENT)
WE'RE HITTING EVERYTHING
WHERE WE ARE (AMBIENT)
WHERE WE ARE
MIRROR VOYAGE
COSMIC WAVE
LOFI DIMENSIONS 2

2. the Author's interest in and to the below Copyright Registrations, along with any renewals and extensions thereof, relating to the Contribution or the Works;

| COPYRIGHT REG. NO. | TITLE OF COPYRIGHTED WORK |
| --- | --- |
| PAu 3-452-712 | A MEMORY STREAM |
| SR 677-648 | AMBIENT ONE |
| SR 679-263 | AMBIENT TWO |
| SRu 1-084-375 | AMBIENT THREE |
| SR 677-194 | ATLAS |
| SR 677-647 | FROM THE INLAND SEA |
| SR 677-646 | LIVE IN BROOKLYN |
| PA 1-306-744 | THE AMERICAN DOLLAR |
| PA 1-346-426 | THE TECHNICOLOUR SLEEP |
| SRu 1-278-417 | 4 BC |

Case 1:21-cv-04727-ARR-RER    Document 8-3    Filed 10/12/21    Page 44 of 75 PageID
Case 1:21-cv-04727-ARR-RER    Document 1-1    Filed 08/22/21    Page 32 of 36 PageID #: 41
#: 196

| | |
|---|---|
| SR 795-327 | CHILL KINGDOM |
| SR 796-458 | WUDAO |
| SR 798-499 | LOST SYMPHONY |
| SR 801-234 | HIGH SUNSET |
| SR 803-421 | LOOKING UP, WE DANCED |
| SR 804-344 | GUIDED BY THE GLOWING SEA |
| SR 806-312 | CAROUSEL |
| SR 808-109 | PATH OF TOTALITY |
| SR 808-786 | THUNDER RISING |
| SR 809-389 | A SERIOUS QUESTION |
| SR 810-547 | A MOMENT BETWEEN US |
| SR 811-469 | EVERYTHING |
| SR 813-285 | UP |
| SRu 1232326 | ACROBATS |
| SRu 1232320 | DISTANCE TO GIBRALTAR |
| SR 848018 | DREAMSCAPE |
| SR 848013 | EYES CLOSING |
| SRu 1232318 | FALLS |
| SRu 1232312 | GHOSTS |
| SR 848014 | MIND DRIFTING |
| SRu 1232321 | MOSAIC |
| SRu 1232324 | NEIGHBORHOOD |
| SRu 1232323 | PARAGON |
| SRu 1232311 | PAUSE |
| SRu 1417220 | SEA OF ROSES |
| SR 870953 | UNDER A WARM RAIN, ET AL. |
| SRu 1232329 | VONDELPARK (NOON) |
| SRu 1232331 | VONDELPARK (NIGHT) |
| SRu 1232314 | WAKE UP SUMMER |
| SR 713-231 | AGE OF WONDER |
| SR 713-737 | AGE OF WONDER (AMBIENT) |
| SR 713-314 | ANYTHING YOU SYNTHESIZE (AMBIENT) |
| SR 713-287 | ANYTHING YOU SYNTHESIZE |
| SR 708-480 | AS WE FLOAT |
| SR 708-466 | AS WE FLOAT (AMBIENT) |
| SR 713-301 | BUMP (AMBIENT) |
| SR 713-282 | BUMP |
| SR 713-281 | CALL |
| SR 708-510 | CAMBIAN |

| SR 713-291 | CHASE |
|---|---|
| SR 708-528 | CHILLPOINT BREAK |
| SR 713-237 | CIRCUITS |
| SR 713-745 | CIRCUITS (AMBIENT) |
| SR 713-238 | CLONES |
| SR 708-486 | CROSSING ASIA |
| SR 708-465 | CROSSING ASIA (AMBIENT) |
| SR 708-497 | DAYTRIP |
| SR 713-303 | DEA (AMBIENT) |
| SR 713-226 | DEA |
| SR 713-239 | EQUINOX |
| SR 713-747 | EQUINOX (AMBIENT) |
| SR 713-278 | ESCAPIST |
| SR 708-489 | ETHER CHANNELS |
| SR 708-538 | ETHER CHANNELS (AMBIENT) |
| SR 708-504 | EVERYONE GETS SHOT |
| SR 708-492 | FACES IN THE HAZE |
| SR 708-494 | FACES IN THE HAZE (AMBIENT) |
| SR 708-458 | FACES IN THE HAZE (FILM EDIT) |
| SR 713-232 | FADE IN OUT |
| SR 713-739 | FADE IN OUT (AMBIENT) |
| SR 708-460 | FAR ADRIFT |
| SR 713-230 | A FEW WORDS |
| SR 713-735 | A FEW WORDS (AMBIENT) |
| SR 708-490 | FIRST DAY |
| SR 708-540 | FIRST DAY (AMBIENT) |
| SR 713-277 | FLOOD |
| SR 713-752 | FLOOD (AMBIENT) |
| SR 708-477 | FRIENDS OF FRIENDS |
| SR 708-463 | FRIENDS OF FRIENDS (AMBIENT) |
| SR 713-276 | FRONTIER MELT |
| SR 708-511 | GLOW |
| SR 708-491 | HEAVY EYES IGNITE |
| SR 708-473 | HEAVY EYES IGNITE (AMBIENT) |
| SR 713-283 | INTERMISSION |
| SR 713-290 | INTRO |
| SR 713-756 | LANDING (AMBIENT) |
| SR 708-547 | LANDING |
| SR 713-321 | LIGHTS DIM (AMBIENT) |
| SR 713-284 | LIGHTS DIM |

| | |
|---|---|
| SR 713-763 | A LONG GOODBYE |
| SR 713-217 | LONG MARCH |
| SR 713-755 | NEAR EAST (AMBIENT) |
| SR 713-764 | NEAR EAST |
| SR 713-234 | OIL AND WATER |
| SR 713-743 | OIL AND WATER (AMBIENT) |
| SR 708-475 | ORACLE |
| SR 708-467 | ORACLE (AMBIENT) |
| SR 713-286 | OUR HEARTS ARE READ |
| SR 713-228 | PALESTINE |
| SR 708-493 | PAR AVION |
| SR 708-470 | PAR AVION (AMBIENT) |
| SR 713-220 | PETERSON |
| SR 713-227 | RAIDED BY WAVES |
| SR 713-235 | RED LETTER |
| SR 713-746 | RED LETTER (AMBIENT) |
| SR 713-307 | RUDIMENTS OF A SPIRITUAL LIFE (AMBIENT) |
| SR 708-503 | RUDIMENTS OF A SPIRITUAL LIFE |
| SR 708-461 | SANDS |
| SR 708-548 | SCHIPOL |
| SR 713-241 | SECOND SIGHT |
| SR 713-749 | SECOND SIGHT (AMBIENT) |
| SR 713-218 | SEPARATE BUT EQUAL |
| SR 713-233 | SHADOWS |
| SR 713-740 | SHADOWS (AMBIENT) |
| SR 713-308 | SIGNALING THROUGH THE FLAMES (AMBIENT) |
| SR 708-500 | SIGNALING THROUGH THE FLAMES |
| SR 713-318 | SIGNALING THROUGH THE FLAMES (FILM EDIT) |
| SR 713-279 | THE SLOW WAIT (PART ONE) |
| SR 713-280 | THE SLOW WAIT (PART TWO) |
| SR 713-311 | THE SLOW WAIT (PART ONE) (AMBIENT) |
| SR 713-313 | THE SLOW WAIT (PART TWO) (AMBIENT) |
| SR 708-508 | SOMNAMBULANCE |
| SR 713-297 | STARSCAPES (AMBIENT) |
| SR 713-289 | STARSCAPES |
| SR 708-541 | STEELTOWN (AMBIENT) |

Case 1:21-cv-04727-ARR-RER    Document 8-3    Filed 10/12/21    Page 47 of 75 PageID
Case 1:21-cv-04727-ARR-RER    Document 1-1    Filed 08/22/21    Page 35 of 36 PageID #: 44
#: 199

| | |
|---|---|
| SR 708-536 | STEELTOWN (PART ONE) |
| SR 708-488 | STEELTOWN (PART TWO) |
| SR 708-487 | STRINGS |
| SR 708-472 | STRINGS (AMBIENT) |
| SR 713-225 | SUMMER OF WAR |
| SR 713-223 | SUPERNOVA LANDSLIDE |
| SR 713-222 | THE SWAMP |
| SR 708-501 | THE TECHNICOLOUR SLEEP |
| SR 713-221 | THOMPSON |
| SR 713-315 | TIME (AMBIENT) |
| SR 713-225 | TIME |
| SR 713-319 | TIME (FILM EDIT) |
| SR 708-499 | TONIGHT, LET'S ALL MAKE LOVE IN LONDON |
| SR 713-316 | TRANSCENDENCE (AMBIENT) |
| SR 713-285 | TRANSCENDENCE |
| SR 708-514 | TWELVE DAYS AWAKE |
| SR 708-457 | UNDERGROUND |
| SR 708-478 | URBANA |
| SR 708-464 | URBANA (AMBIENT) |
| SR 708-513 | WAR ON CHRISTMAS |
| SR 713-305 | WE'RE HITTING EVERYTHING (AMBIENT) |
| SR 713-288 | WE'RE HITTING EVERYTHING |
| SR 713-759 | WHERE WE ARE (AMBIENT) |
| SR 708-549 | WHERE WE ARE |
| SR0000893216 | MIRROR VOYAGE |
| SR0000886380 | COSMIC WAVE |
| SR0000888981 | LOFI DIMENSIONS 2 |

3. any copyright applications presently pending at the time of execution of this agreement and any resulting registrations therefrom;

4. all works based upon, derived from, or incorporating the Contribution;

5. all income, royalties, damages, claims and payments now or hereafter due or payable with respect to the Contribution or the Works;

6. all causes of action, either in law or in equity, for past, present, or future infringement of copyright related to the Works, and

Case 1:21-cv-04727-ARR-RER   Document 8-3   Filed 10/12/21   Page 48 of 75 PageID
Case 1:21-cv-04727-ARR-RER   Document 1-1   Filed 08/22/21   Page 36 of 36 PageID #: 45
#: 200

<u>*Copyright Assignment*</u> <span style="float:right">*p. 9 of 9*</span>

7. all rights corresponding to any of the foregoing, throughout the world.

The Author's Contribution consists of authorship of the Works, including music, lyrics, recording production, sound recordings, performance rights and any and all other authorship interests of any kind, now vested and contingent therein. The other author of the Works is Richard Thomas Cupolo.

This Assignment includes the assignment of all rights, including copyright, to any modifications or other alterations to the Works or the Contribution that the Author makes under this Agreement or any other agreement between the Author and Company.

IN WITNESS THEREOF, Author duly executes this Agreement.

By: _____
John Keith Emanuele ("Author")

3/31/21
Date

STATE OF NEW YORK      )
                       )  SS.:
COUNTY OF _Queens_     )

Before me on this **31** day of _March_____, 20**21**, personally appeared John Keith Emanuele, to me known to be the person who is described in and who executed the foregoing assignment instrument and acknowledged to me that he executed the same of his own free will for the purpose therein express.

_____
NOTARY PUBLIC

RONEL BACCAY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BA6363265
Qualified in Queens County
My Commission Expires 08-14-2021

# Exhibit 2

**Charming Beats <contact@charmingbeats.com>**                6/23/2021 2:41 PM

# license

To info@improvplayhouse.com <info@improvplayhouse.com>

---

Hello,

we noticed you are displaying video content paired with the music of The American Dollar, whom we represent. We do not have any record of granting a license for these pieces, we request that you kindly forward your license information for the use of their music to our email address: contact@charmingbeats.com

https://www.youtube.com/watch?v=obsZtOund9c

Thank You,
Charming Beats Licensing
Queens, NY

Case 1:21-cv-04727-ARR-RER   Document 8-3   Filed 10/12/21   Page 51 of 75 PageID #: 448

# Exhibit 3

GF

# GARBARINI FITZGERALD P.C.

250 Park Avenue
7th Floor
New York, New York 10177
Phone: 212.300.5358
Fax: 888.265.7054
www.garbarinilaw.com

July 4, 2021

## NOTICE OF LITIGATION
## DEMAND TO CEASE AND DESIST
## DEMAND TO PRESERVE DOCUMENTS

VIA EMAIL To:      info@improvplayhouse.com; david@improvplayhouse.com
FIRST-CLASS MAIL

Improv Playhouse
116 W. Lake
Libertyville, Illinois 60048

Re:    Charmin Beats LLC. adv. Improv Playhouse ("IMPROV")

Improv:

I represent Charming Beats LLC the sole owner of the copyrighted recording and composition titled "Starscapes (Ambient)" – U.S. Copyright Registration No. SR 708-541 (the "Copyrighted Track"). IMPROV created an advertisement titled "Film Camp 2013 Documentary" (the "Infringing Advertisement"). IMPROV, directly and through its agent Justin Daniels, copied and synchronized the Copyrighted Track to the Infringing Advertisement without a license or authority. IMPROV then distributed the Infringing Advertisement to YouTube and publicly displayed the Infringing Advertisement on its YouTube page located at <https://www.youtube.com/watch?v=obsZtOund9c>.

IMPROV was informed of the fact that there was no license for the Copyrighted Track by YouTube, and later by email from my client dated June 23, 2021. IMPROV's refusal to cease and desist has now escalated this matter to litigation. IMPROV has, without question, infringed my client's rights to the Copyrighted Track as set forth in Section 106 of the U.S. Copyright Act. The facts that IMPROV refused to license the Copyrighted Track and continued its infringement after notice are sufficient predicates that satisfy the "reckless disregard" standard for enhanced damages pursuant to Section 504(c)(2) of the Copyright Act.

CERTA BONUM CERTAMEN ◆ FIGHT THE GOOD FIGHT

GARBARINI FITZGERALD P.C.
Page 2

My client is entitled to a judgment for its compensatory damages as well as all IMPROV's profits in excess of my client's damages. Alternatively, my client may elect a statutory damage award between $30,000 and $150,000, plus its reasonable attorneys' fees, costs, and pre-and-post judgment interest. We expect a high statutory award here in light of IMPROV's refusal to comply with the law, and the prior notice.

Provided someone contacts me at rgarbarini@garbarinilaw.com or at 212.300.5358, no later than 3:00 pm on July 12, 2021, I will refrain from filing. In the event IMPROV fails to contact me, I will have no choice but to file against IMPROV in the Federal Court for the Eastern District of New York. In the interim, IMPROV is required to preserve all documents including web pages, in their original condition, or face a possible spoliation charge at the trial of this action.

GARBARINI FITZGERALD P.C.

By: _Richard M. Garbarini_

Richard M. Garbarini

# EXHIBIT B

2020 WL 5763774
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Andrea BONILLA, individually
and on behalf of all others
similarly situated, Plaintiff,

v.

NELSON & KENNARD, Robert
Scott Kennard, Joseph Helfrick,
ABC Legal Services, LLC and
Nancy Keyler, Defendants.

19-cv-05067 (DLI) (RER)

|

Signed 09/28/2020

**Attorneys and Law Firms**

David M. Barshay, Jonathan Mark Cader, Craig B. Sanders, Barshay Sanders, PLLC, Garden City, NY, Jacob Silver, Jacob Silver, Attorney at Law, Woodmere, NY, for Plaintiff.

Boris Brownstein, Clark Hill PLC, Princeton, NJ, for Defendants.

**MEMORANDUM & ORDER**

DORA L. IRIZARRY, United States District Judge:

**\*1** Plaintiff Andrea Bonilla ("Plaintiff"), brings this putative class action against Defendants Nelson & Kennard ("N&K"), Robert Scott Kennard ("Kennard"), Joseph Helfrick ("Helfrick"), ABC Legal Services, LLC ("ABC"), and Nancy Keyler ("Keyler") (collectively, "Defendants"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq. See*, Amended Complaint ("Am. Compl."), Dkt. Entry No. 10. N&K, Kennard, and ABC, who are represented by the same counsel, each moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), raising the same arguments. *See*, N&K Mot. to Dismiss, Dkt. Entry No. 13; Kennard Mot. to Dismiss, Dkt. Entry No. 20; ABC Mot. to Dismiss, Dkt. Entry No. 23. Plaintiff opposed each motion. *See*, Opp'n to N&K Mot. to Dismiss, Dkt. Entry No. 16; Opp'n to Kennard Mot. to Dismiss, Dkt. Entry No. 24;

Opp'n to ABC Mot. to Dismiss, Dkt. Entry No. 26. For the reasons set forth below, the motions to dismiss for lack of personal jurisdiction are granted and the case is dismissed in its entirety.

**BACKGROUND**

Defendants, who do not reside in or conduct business in New York, sought to collect an alleged debt from Plaintiff, a resident of New York. Am. Compl. ¶¶ 9-27; 49-50. First, Defendants sent a debt collection letter to Plaintiff at 18200 Von Karman Ave, Ste 600, Irvine, CA 92612-7146 (the "California Address"). *Id.* ¶¶ 50-54. Plaintiff has never resided, been employed by any company doing business, or held herself out as residing or being employed at the California Address. *See, Id.* ¶¶ 55-64.

Next, Defendants filed a debt collection lawsuit in the Superior Court of California, County of Orange (the "California Lawsuit"). *Id.* ¶ 65. In the summons filed in the California Lawsuit, Defendants represented that jurisdiction and venue were proper in the Superior Court of California, County of Orange, because Plaintiff had entered into the contract and lived there at the time of filing. *Id.* ¶¶ 66, 68. Plaintiff alleges that Defendants' attestation was false at the time it was made, maintaining that she never has entered into any contract in California, nor resided in California. *Id.* ¶¶ 67, 70-71.

Defendants attempted to serve Plaintiff with a copy of the summons and complaint of the California Lawsuit at the California Address, and then filed Proof of Service of Summons ("Proof of Service"), generated by ABC and signed by Keyler, which attested that Plaintiff had been served personally at the California Address. *Id.* ¶¶ 76, 79-83; *See also*, Proof of Service, Am. Compl. Ex. 3. The Proof of Service provides:

"I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: **06/26/2019** at *(time)* **5:01 PM**

**Andrea Bonilla, [w]ho accepted service, with identity confirmed by subject stating their name, an Hispanic female approximately 35-45 years of age, 5'4"-5'6" tall, weighing 140-160 lbs with brown hair."**

*See, Id.* However, Plaintiff alleges that, on the date provided on the Proof of Service, she was in New York, and the physical

Case 1:21-cv-04727-ARR-RER   Document 8-3   Filed 10/12/21   Page 56 of 75 PageID #: 208

description of the individual who accepted service "does not match that of Plaintiff." Am. Compl. ¶ 85.

**\*2** Plaintiff alleges she never was served properly with the complaint in the California Lawsuit, contending that the service purportedly performed on her was "sewer service," a term "widely used to describe the practice of failing to serve a summons and complaint and then filing a fraudulent affidavit of service." *Id.* ¶¶ 91-93; *See also, Rotkiske v. Klemm*, 140 S. Ct. 355, 365 (2019) (Ginsburg, J., dissenting) ("[S]ewer service" refers to "intentionally serving process in a manner designed to prevent [a defendant] from learning of the collection suit.").

Plaintiff asserts that the California Lawsuit resulted in the entry of a default judgment against her. *Id.* ¶ 88. A review of the publicly available docket sheet indicates that no such default judgment was entered, and that the California Lawsuit was dismissed on September 16, 2019. *See,* N&K Mot. to Dismiss Ex. 4, Electronic Case Summary, *Capital One Bank USA, N.A. v. Bonilla*, No. 30-2019-01077294-CL-CL-CJC.

Plaintiff alleges that, by commencing the California Lawsuit in the County of Orange, California, when Plaintiff was and is a resident of New York State, Defendants violated § 1692i of the FDCPA. Am. Compl. ¶¶ 99-114. Plaintiff further alleges that Defendants produced and filed fraudulent: (1) affidavits of service; (2) attorney affirmations attesting that service had been made; (3) affidavits of merit stating that Defendants have personal knowledge of the facts necessary to obtain a default judgment; and (4) used fraudulent, deceptive, and misleading affidavits to obtain a default judgment, in violation of § 1692e of the FDCPA. Am. Compl. ¶¶ 115-122. Plaintiff further claims that the fraudulent representation that she was served in California is a false, deceptive or misleading representation or means in connection with the collection of a debt, in violation of § 1692e of the FDCPA. Am. Compl. ¶¶ 123-133. Finally, Plaintiff claims that the format, structure, and language of the debt collection letter violate §§ 1692e and 1692g of the FDCPA. Am. Compl. ¶¶ 134-173.

N&K, Kennard, and ABC contend that there is no personal jurisdiction here because Plaintiff's claims arise entirely from actions allegedly taken in California, and that the only connection to New York State that Plaintiff alleges is her residence there. The Court agrees.

## LEGAL STANDARD

"On a [Rule] 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). Where "a district court relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant." *Porina v. Marward Shipping*, 521 F.3d 122, 126 (2d Cir. 2008) (quotation marks and citations omitted).

"A prima facie case [of personal jurisdiction] requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x. 16, 19 (2d Cir. 2015) (summary order) (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)). In addition, "the Court must construe all of the allegations in the light most favorable to the plaintiff, and the plaintiff need only plead good faith allegations of fact that, if credited, would support jurisdiction over the defendant." *O'Keefe v. Blue & Gold Fleet, L.P.*, 634 F. Supp.2d 284, 285 (E.D.N.Y. 2009) (citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).

**\*3** "The breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). "In diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (citation omitted). "If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." *Id.* The New York long-arm statute provides, in relevant part:

"(a) ... As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent ...

3. commits a tortious act without the state causing injury to person or property within the state ... if he ...

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce" N.Y. CPLR § 302(a)(3)(ii). "Under [§]302(a)(3), each element is essential, and if plaintiff fails to proffer sufficient evidence for any element, it is dispositive of the issue of personal jurisdiction under this provision." *Fisher v. O'Brien*, 2010 WL 1269793, at *7 (E.D.N.Y. Mar. 9, 2010), *report and recommendation adopted*, 2010 WL 1286365 (E.D.N.Y. Mar. 30, 2010) (citation and quotation marks omitted).

## DISCUSSION

Plaintiff, who bears the burden of making a prima facie showing of personal jurisdiction over Defendants, alleges in the Complaint that the Court may exercise jurisdiction over Defendants under N.Y. CPLR § 302(a)(2), or, alternatively, § 302(a)(3). *See*, Am. Compl. ¶¶ 4-5. However, in opposing the motions to dismiss, Plaintiff abandoned the theory of personal jurisdiction under § 302(a)(2), and advanced a theory of personal jurisdiction only under § 302(a)(3)(ii), which "allows for jurisdiction over an out-of-state defendant with no contacts with New York, if, *inter alia*, the defendant is alleged to have committed a tortious act outside the State that caused, and reasonably should have been expected by the putative defendant to cause, injury to a person or property within the State." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 32 (2d Cir. 2010) ("*Penguin I*"), *certified question accepted*, 15 N.Y.3d 744 (2010) ("*Penguin II*"), *and certified question answered*, 16 N.Y.3d 295 (2011) ("*Penguin III*").

The Court must determine first whether Defendants committed an act "causing injury to person or property within the state" of New York. CPLR § 302(a)(3). "[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999). "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990); *See also*, *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) ("[T]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient

basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.").

*4 The pleadings and affidavits, taken together and viewed in the light most favorable to Plaintiff, do not establish that the situs of the injury is New York. Plaintiff asserts, for example, that "it cannot be disputed that N&K's tortious act caused injury to Plaintiff in New York. While N&K attempts to dispute this point, the cases relied upon by N&K are inapposite." Opp'n to N&K Mot. to Dismiss at 11. Plaintiff not only fails to articulate how N&K's alleged tortious act caused injury to Plaintiff in New York, but also fails to specify what "tortious act" she is referring to. Indeed, each of the original events that gave rise to Plaintiff's alleged injuries occurred in California: (1) Defendants sent the debt collection letter from their California office to the California Address; (2) Defendants filed the California Lawsuit in California; (3) Defendants produced and filed the allegedly false affidavits and affirmations in California; (4) Defendants made the allegedly fraudulent representation that Plaintiff was served at the California Address in California. None of the events took place in New York. The only connection to New York in this action is Plaintiff's residence in New York.

Rather than articulate how New York is the situs of injury, Plaintiff asks the Court to expand its situs of injury analysis based on *Penguin Grp. (USA) Inc. v. Am. Buddha*, which she describes as "both analogous and persuasive." *See*, Opp'n to N&K Mot. to Dismiss at 14. In *Penguin I*, the U.S. Court of Appeals for the Second Circuit certified a question to the New York State Court of Appeals, which was narrowed and reformulated as follows:

"In copyright infringement cases involving the uploading of a copyrighted printed literary work onto the Internet, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302 (a) (3) (ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?" *Penguin III*, 16 N.Y.3d at 301-302.

The *Penguin* cases involve circumstances far removed from those at bar and are inapposite. As an initial matter, the New York State Court of Appeals made clear that "the role of the Internet in cases alleging the uploading of copyrighted books distinguishes them from traditional commercial tort cases where courts have generally linked the injury to the place where sales or customers are lost." *Penguin III*, 16 N.Y.3d at 306. The court noted that, "The injury in the case before us is more difficult to identify and quantify because

Case 1:21-cv-04727-ARR-RER Document 8-3 Filed 10/12/21 Page 58 of 75 PageID #: 210

the alleged infringement involves the Internet, which by its nature is intangible and ubiquitous." *Id.* at 304. Moreover, the court emphasized the "diverse ownership rights enjoyed by copyright holders situated in New York," holding that the injury caused by "the instantaneous availability of those copyrighted works ... for anyone, in New York or elsewhere, with an Internet connection to read and download the books free of charge" was "dispersed throughout the country and perhaps the world." *Id.* at 304-05, 307.

Plaintiff contends that *Penguin III*'s situs-of-injury analysis applies to the FDCPA "insofar as § 1692i attempts to balance the economic disparity between for-profit debt collectors and consumers by mandating that a debt collector bring any collection action against a consumer in the jurisdiction in which the consumer resides." *See,* Opp'n to N&K Mot. to Dismiss at 14. But *Penguin III*'s holding is specific to copyright in the context of dissemination by the Internet. Plaintiff does not explain how the role of the Internet or the diverse ownership rights enjoyed by copyright holders are implicated here. Indeed, "New York has strictly construed CPLR § 302(a)(3), refusing to exercise personal jurisdiction based solely on a plaintiff's residence or domicile within New York." *Twine v. Levy,* 746 F. Supp. 1202, 1206 (E.D.N.Y. 1990) (citing *McGowan v. Smith,* 52 N.Y.2d 268, 274 (1981)).

In contrast to the *Penguin III* facts and analysis, cases that have addressed the operation of the FDCPA and are more analogous to the case at bar do not support Plaintiff's contentions. For example, in *Fisher v. O'Brien,* 2010 WL 1269793 (E.D.N.Y. Mar. 9, 2010), report and recommendation adopted, 2010 WL 1286365 (E.D.N.Y. Mar. 30, 2010), defendants filed liens in Ohio on plaintiff's horses. 2010 WL 1269793 at *6-*7. Plaintiff, a resident of New York, brought an action in this district alleging, *inter alia,* that the liens violated § 1692g of the FDCPA. *Id.* The Court dismissed the action for lack of personal jurisdiction, finding that, under CPLR § 302(a)(3), the situs of injury was Ohio not New York. 2010 WL 1269793, at *7; *See also, Mirman v. Feiner,* 900 F. Supp.2d 305, 319 (E.D.N.Y. 2012) (where theory of injury was based on commencement of lawsuit in Florida against New York resident, situs of injury was Florida, and not New York).

**\*5** Similarly, in *Twine v. Levy,* plaintiff, a New York resident, brought a malpractice action in this district on the basis of defendant's alleged misrepresentation of him during a sentencing hearing in the U.S. District Court for the Western District of Washington. 746 F. Supp. at 1203. The court found no basis for jurisdiction under N.Y. CPLR § 302(a) (3), concluding that the events that caused plaintiff's injuries occurred in Washington and that, "while plaintiff may have suffered damages in New York, his injury did not occur in New York." *Twine,* 746 F. Supp. at 1206-07.

As each of the events that caused Plaintiff's alleged injuries occurred in California, the Court finds that the situs of injury is California, and not New York. Accordingly, Plaintiff has failed to establish personal jurisdiction over Defendants under CPLR § 302(a)(3). *See, Fisher,* 2010 WL 1269793, at *7.

## CONCLUSION

For the reasons set forth above, the motions to dismiss for lack of jurisdiction are granted, and this action is dismissed in its entirety.

SO ORDERED.

**All Citations**

Slip Copy, 2020 WL 5763774

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

**2021 WL 4076979**
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

MORNINGSTAR FILMS, LLC and
Grandmaster Jhong Ukh Kim, Plaintiffs,
v.
Julius R. NASSO, J.R. Nasso Productions,
LLC, Darc Film, LLC, Phillip Goldfine,
Industry Releasing, Inc. and Hollywood
Media Bridge, LLC, Defendants.

20-cv-2552 (ENV) (RML)
|
Signed August 15, 2021

**Attorneys and Law Firms**

Francelina Maria Perdomo, Kyle George Kunst, Gallet
Dreyer & Berkey, LLP, New York, NY, Gary Robert
DeFilippo, Law Offices of Gary R. Defilippo, PC, Staten
Island, NY, for Plaintiffs.

Robert J. Hantman, Hantman & Associates, New York, NY,
for Defendants J.R. Nasso Productions, LLC, Darc Film,
LLC, Phillip Goldfine, Industry Releasing, Inc., Hollywood
Media Bridge, LLC.

MEMORANDUM & ORDER

VITALIANO, D.J.

**\*1** Plaintiffs Jhong Ukh Kim and Morningstar Films, LLC
bring this copyright infringement action against Julius R.
Nasso, J.R. Nasso Productions, LLC, Darc Film, LLC, Phillip
Goldfine, Industry Releasing, Inc. and Hollywood Media
Bridge, LLC. Defendants now move to dismiss pursuant to
Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil
Procedure and, in the alternative, request that the Court
abstain from hearing the case. For the reasons set forth below,
defendants' motion is granted in part and denied in part.

Background[1]

This case arises from disputes over the distribution of the
movie entitled "*Darc*". Interpersonal relationships among
many of the parties, apparently, long antedated its production.
Jhong Ukh Kim, for example, had known Julius R. Nasso,
even more prominent as a film producer, for decades when,
in 2014, Nasso approached Kim seeking his participation in
the production of *Darc*. Compl., Dkt. 1, ¶ 21. Nasso had been
given the plot and characters for the film from actor Tony
Schiena, who asked Nasso to get involved as a producer. *Id.*
¶ 28. Nasso, in turn, asked Kim to help finance and act in the
movie. *Id.* A personage in his own right, Kim is a karate Grand
Master, having earned one of only three ninth-degree black
belts in the world, and has trained thousands of students and
won various awards for his work. *Id.* ¶¶ 21–25. Nasso also
asked Kim's three sons, who were also trained in karate, to
participate. *Id.*

**\*2** Phillip Goldfine, another long-time friend of Nasso,
controlled a web of motion picture making companies,
including 5G Productions, Inc., Industry Releasing, Inc. and
Hollywood Media Bridge, LLC. *Id.* ¶ 29. Over the years,
Nasso and Goldfine had collaborated on several cinema
projects. *Id.* ¶ 30. While Kim and Nasso were on a trip to
Los Angeles in November 2014, Nasso introduced Kim to
Goldfine. *Id.* ¶ 29. At some point thereafter, Goldfine became
involved in the production of *Darc*. *Id.*

Venturing on, in December 2014, Kim and Nasso created
Morningstar, LLC to develop and produce *Darc*. *Id.* ¶ 32. It
was agreed by the venturers that Morningstar would become
the exclusive owner of all intellectual property related to
*Darc*, including its copyrights. *Id.* ¶ 33. It was also agreed
that no contract or agreement purporting to bind Morningstar
would be valid unless it was executed by all of Morningstar's
managers: Kim, Nasso and Schiena. *Id.* ¶¶ 32, 34. Although
Nasso would, in February 2016, assign his Morningstar
membership units to Darc Film, LLC, a Nevada entity of
which he is the sole manager, this transaction did not transfer
ownership of *Darc*'s copyrights. *Id.* ¶¶ 35–36.

Production of the movie would prove more than just a dream.
It came to fruition in Vancouver, Canada, beginning in early
2015 and running through February 2018. *Id.* ¶¶ 37–38.
The U.S. copyright for *Darc* was registered on February 20,
2018 in Morningstar's name, receiving registration number
PAu003910215. *Id.* ¶ 38.

Looking ahead to the film's release, and, apparently, on
his own, Kim had, in or around October 2017, retained

the services of Elsa Ramo, a California-based attorney with experience negotiating and finalizing agency agreements to distribute films. *Id.* ¶ 39. At that time, Ramo's firm began negotiating an agency agreement with Goldfine's 5G Productions, Kim says, on behalf of Morningstar, which, if consummated, would have allowed 5G Productions to market and distribute *Darc. Id.* ¶ 40. The negotiations between 5G Productions, Nasso and Kim continued through March 2018. *Id.*

Unbeknownst to Kim, plaintiffs charge, Nasso had already struck an agreement on behalf of Morningstar with Goldfine for Goldfine to distribute *Darc* through another company of his, Industry Releasing. *Id.* ¶ 42; Nasso Aff., Dkt. 10-4, at Exs. E–F (providing the agreement).[2] That agency agreement was entered into on October 30, 2017. Compl. ¶ 43. Although a draft version contained a signature line for Kim, the final agreement contained only signature lines for Nasso and Goldfine, on behalf of their respective corporate entities. *Id.* ¶¶ 44, 46. The agency agreement signed by Nasso with Industry Releasing makes clear that the distribution rights for *Darc* that are the object of the agreement are the distribution rights owned by Morningstar. *Id.* ¶¶ 43, 46. There was no indication in the executed agreement, however, that either Kim or Schiena had consented, much less had done so in writing as, plaintiffs claim, is required by the print venture agreement. *See id.* ¶¶ 32, 34, 44, 46; Nasso Aff. at Exs. E–F.

Goldfine's distribution company moved swiftly. Without Kim's knowledge and consent, plaintiffs complain, Goldfine and Industry Releasing entered into distribution agreements with Amazon Prime, which made *Darc* available for rent or purchase in the United States, and Netflix, which began streaming *Darc* on May 1, 2018 in the United States, Germany, France, Italy and the Netherlands. *Id.* ¶¶ 47–48; Dkt. 10-5.

**\*3** Going on offense first, on June 6, 2018, Nasso filed a lawsuit against Kim and his wife in Richmond County Supreme Court. *See id.* ¶ 49; State Compl., Dkt. 13-3. Nasso alleged that Kim had failed to take the necessary steps to distribute the film, and moved for an order requiring Kim to sign the agency agreement with Industry Releasing. Compl. ¶¶ 50–51. The motion was denied. *Id.* ¶ 51. After Nasso filed the state action, James Bruce, the director of finance for Industry Releasing and Hollywood Media Bridge, wrote to Nasso directing him to cease distribution of *Darc* until Kim had signed an agreement. *Id.* ¶ 54. Goldfine was copied on the email. *Id.* Undeterred, on September 25, 2018, Goldfine and

Industry Releasing recorded a lien on *Darc*'s copyright chain of title and a mortgage on *Darc*, which were later assigned to another entity. *Id.* ¶¶ 55–57, 60.

Notwithstanding the shots fired during the legal wrangling, Goldfine and Hollywood Media Bridge continue to distribute *Darc. Id.* ¶ 58. Netflix and Amazon continue to stream *Darc* in the United States. *Id.* Kim and Morningstar have not received any funds or royalties relating to the film. *Id.* ¶ 59. While continuing to defend Nasso's action against him in state court, Kim, along with Morningstar, filed the instant action on June 8, 2020, bringing one claim of copyright infringement related to *Darc's distribution. Id.* ¶¶ 61–77; Dkt. 10-3.

## Discussion

### I. Personal Jurisdiction

Three of the six defendants—Goldfine, Industry Releasing and Hollywood Media Bridge (the "California defendants") —challenge personal jurisdiction, moving to dismiss the case against them under Federal Rule of Civil Procedure 12(b) (2). *See* Defs.' Mem., Dkt. 10-11, at 8–10. Jurisdictional challenges to a court's authority over a defendant or its power to entertain the subject matter of the lawsuit at all take priority over motions to dismiss sought on other grounds. They must be resolved by the court before moving on to any substantive dismissal motion. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002); *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963). On such questions, the plaintiff bears the burden to establish a court's personal jurisdiction over all defendants. *See Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013). To defeat a motion contesting the existence of *in personam* jurisdiction, a plaintiff need only make a *prima facie* showing of jurisdiction, through legally sufficient allegations of jurisdictional facts. *See id.*; *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). When considering a motion to dismiss for lack of personal jurisdiction, the district court may rely on pleadings and affidavits submitted by plaintiffs or conduct an evidentiary hearing. *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986); *Henkin v. Gibraltar Priv. Bank & Tr. Co.*, No. 16-CV-5452 (LDW), 2018 WL 557866, at \*2 (E.D.N.Y. Jan. 22, 2018) (quoting *Dorchester*, 722 F.3d at 86). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.' " *Dorchester*, 722 F.3d

2021 WL 4076979

at 84 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Although "[e]ventually personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial," "where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).

To determine whether a federal district court has personal jurisdiction over an out-of-state defendant in a federal question case, the court engages in a two-step analysis. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243–44 (2d Cir. 2007); *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22, 24 (2d Cir. 2004). When, as here, a plaintiff eschews any claim that general jurisdiction exists over the contesting defendant, the district court first considers whether the long arm statute of New York, as the forum state, confers specific jurisdiction over defendants, then confirms that this exercise of jurisdiction comports with federal due process protections. *See Best Van Lines, Inc.*, 490 F.3d at 244; *Sunward Elecs., Inc.*, 362 F.3d at 22, 24; N.Y. C.P.L.R. § 302.[3] New York's long arm statute, as relevant here, allows courts to exercise personal jurisdiction over an out-of-state defendant who commits a tortious act outside the state if the defendant "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3)(ii). Instructively, the court in *Royalty Network v. Dishant.com, LLC* broke down this provision into four factors: (1) tortious activity out of state, (2) causing injury in New York, (3) that was reasonably foreseeable to the defendants, (4) who derived substantial revenue from interstate commerce. 638 F. Supp. 2d 410, 423 (S.D.N.Y. 2009).

**\*4** Since this is a copyright infringement case, heading up plaintiffs' effort to make a *prima facie* showing of jurisdiction are the facts of the alleged tortious conduct committed by defendants, that is, their infringement of Morningstar's distribution rights to *Darc*. Specifically, Kim relies on his plausibly pleaded allegations that defendants' distribution of *Darc* without their permission constituted copyright infringement. *See* Compl. ¶¶ 61–77; Pls.' Opp'n Mem., Dkt. 13, at 17–25. Defendants, perhaps surprisingly, do not deny committing the complained-of acts, instead raising various affirmative defenses. *See* Defs.' Mem. at 8–10, 14–21. Regardless, the court's analysis on this prong is "distinct

from an inquiry into the ultimate liability on the merits," such that "plaintiff need not actually prove that defendant committed a tort but rather need only state a colorable cause of action." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 125–27 (2d Cir. 2002). In any event, copyright infringement constitutes tortious activity, and plaintiffs state a colorable claim for it, satisfying the first factor. *Royalty Network Inc.*, 638 F. Supp. 2d at 423.

The nature of copyright infringement, especially when committed via internet streaming services, has created complexities for courts assessing the second factor: whether the infringement caused injury in New York. As a general matter, under C.P.L.R. § 302(a)(3), personal jurisdiction is not established simply because the injured plaintiffs are domiciled in New York. *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980). Additionally, suffering "mere economic injury within the state" is "insufficient, alone, to establish a direct injury in New York." *Troma Entm't, Inc.*, 729 F.3d at 218 (internal citations and quotation marks omitted). As with most things, the digital age has brought a challenge to the spatial reality that had been bedrock to determining the constitutional reach of a state's jurisdiction under its long arm statute. In "copyright infringement cases involving the uploading of copyrighted printed literary work onto the Internet"—the New York Court of Appeals has held that "the situs of injury for purposes of determining long-arm jurisdiction over a non-resident defendant under New York law" is "the residence or location of the principal place of business of the copyright holder," and not "the location of the infringing action." *Penguin Grp. (USA) Inc. v. Am. Buddha ("Penguin II")*, 16 N.Y.3d 295, 301–02, 921 N.Y.S.2d 171, 946 N.E.2d 159 (2011). Yet courts have read *Penguin II*, which answered a question certified by the Second Circuit, very narrowly, as controlling only in digital piracy cases. *See, e.g., Troma Entm't, Inc.*, 729 F.3d at 219–20; *PharmacyChecker.com, LLC v. Nat'l Ass'n of Boards of Pharmacy*, No. 19-CV-7577 (KMK), —— F.Supp.3d ——, —— n.8, 2021 WL 1199363, at \*6 n.8 (S.D.N.Y. Mar. 30, 2021); *Adwar Casting Co., Ltd. v. Star Gems Inc.*, 342 F. Supp. 3d 297, 304–05 (E.D.N.Y. 2018); *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 16-CV-442 (NRB), 2017 WL 449913, at \*5–7 (S.D.N.Y. Jan. 18, 2017); *Verragio, Ltd. v. Malakan Dimond Co.*, No. 16-CV-4634 (CM), 2016 WL 6561384, at \*3–4 (S.D.N.Y. Oct. 20, 2016).

At any rate, the seminal decision interpreting *Penguin II* is the Second Circuit's in *Troma*, a case brought by the

New York-based production company Troma Entertainment, Inc., which owned the distribution rights to two films it had produced. *See Troma Entm't, Inc.*, 729 F.3d at 216. Defendants entered into a distribution agreement in Germany without Troma's knowledge. *Id.* at 216–17. Defendants falsely represented to the German distribution company that they owned the rights to the films, purchased German-language copies of them, delivered them to the German company and secretly pocketed the proceeds. *Id.* at 217. The scheme was allegedly concocted in California, and none of the alleged misconduct occurred in New York. *Id.* at 220. Troma argued that since its principal place of business was in New York and it owned the copyrights, New York courts had personal jurisdiction over the non-domiciliary defendants under *Penguin II*. The Second Circuit found *Penguin II* inapplicable because Troma's case did not involve digital piracy. Instead, it resembled a traditional commercial tort case, in which the situs of injury is the place where plaintiff lost business. *Id.* Accordingly, plaintiffs could not rely on their domicile and had to show "a non-speculative and direct injury to person or property in New York that goes beyond the simple economic losses that its New York-based business suffered." *Id.* Yet Troma alleged only "generalized harm (i.e., statutory damages as a result of [defendants'] willful infringement) to its exclusive distribution right." *Id.* This was insufficient. Although the court indicated that injury to "the continuing value of one or more of a copyright holder's bundle of rights" could suffice, there, it was "entirely implausible that the infringement alleged by Troma—discrete, geographically circumscribed theft of the opportunity to license distribution of copyrighted works—would cause such an injury." *Id.* Because Troma alleged only that the out-of-state defendants caused it economic loss in the state and not direct injury to its intellectual property rights, New York courts lacked personal jurisdiction over defendants. *Id.*

**\*5** The facts in the instant case bear a striking similarity: a New York-based production company with ownership of a copyright, Morningstar, was cut out of a distribution deal with California-based parties regarding a film they had produced in Canada. No digital piracy occurred, so *Penguin II* is not controlling and plaintiffs' New York domicile does not establish jurisdiction. *See Freeplay Music, LLC*, 2017 WL 449913, at \*6. To support the exercise of personal jurisdiction over the California defendants, then, plaintiffs must "allege facts demonstrating a non-speculative and direct New York-based injury to [their] intellectual property rights," harming their "continuing value." *Troma Entm't, Inc.*, 729 F.3d at 220. Yet Morningstar and Kim allege only business losses and

make conclusory assertions about their intellectual property rights, of the sort rejected in *Troma* and its progeny. As to business losses, plaintiffs allege they have not received royalties from *Darc* and have faced "substantial damages to its business" such as "loss of income and profits." Compl. ¶¶ 59, 76. Yet Second Circuit precedent makes clear that "the assertion of mere economic injury within the state" does not create jurisdiction, regardless of whether that economic harm stems from copyright infringement. *Troma Entm't, Inc.*, 729 F.3d at 218. For example, in a case brought by a New York-based copyright holder against an Ohio company that used plaintiff's songs in online advertisements without authorization, the court applied *Troma* and held that plaintiff's alleged "loss of ... a potential customer and the corresponding loss of licensing revenue" was mere economic loss insufficient to confer jurisdiction. *Freeplay Music, LLC*, 2017 WL 449913, at \*6. Another court reached the same conclusion in a case where a New York-based license holder claimed it lost sales when the out-of-state defendant infringed on its jewelry design copyright. *Verragio, Ltd.*, 2016 WL 6561384, at \*3. Plaintiffs' allegations that the California defendants' distribution deals caused them lost royalties and other profits in New York are no different; they do not create specific jurisdiction under the long arm statute.

Plaintiffs also allege they have faced the "dilution of the value of [their] rights." Compl. ¶ 76. Although *Troma* did not rule out the possibility that a copyright holder could establish jurisdiction by adequately alleging continuing harm to the value of its unique bundle of rights, plaintiffs' allegation is conclusory and of the sort readily rejected by courts applying *Troma*. *Cf. Troma Entm't, Inc.*, 729 F.3d at 220. For example, in a case where the copyright holder alleged that the out-of-state defendant damaged its copyrights by posting unauthorized images online, the court found that "[t]he conclusory allegations as to the loss of [plaintiff's] rights as a copyright holder are similar to the allegations rejected by the *Troma* court" and held there was no personal jurisdiction. *Adwar Casting Co.*, 342 F. Supp. 3d at 304; *see also Freeplay Music, LLC*, 2017 WL 449913, at \*6 (finding no jurisdiction where plaintiff "merely repeats conclusory allegations that its rights as a copyright holder have been violated"); *Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.*, No. 16-CV-5883 (JGK) (RWL), 2018 WL 3639929, at \*12 (S.D.N.Y. July 10, 2018), *report and recommendation adopted*, 2018 WL 3632524 (July 31, 2018) (same, where plaintiff "seeks only statutory damages for generalized harm and ... simply has not pled (or shown in its submissions) the requisite specific injury to its unique bundle of copyright

rights"). To establish personal jurisdiction, plaintiffs would have to allege, in a non-conclusory fashion, that the California defendants caused harm to their unique bundle of rights as copyright holders, such as by " 'diminish[ing] the incentive to publish or write,' or engender[ing] 'market confusion ....' " *Troma Ent., Inc.*, 729 F.3d at 219 (quoting *Penguin II*, 16 N.Y.3d at 305, 921 N.Y.S.2d 171, 946 N.E.2d 159).

Consistent with the pleadings, the situs of plaintiffs' injury at the hands of the California defendants could be California, since it is where plaintiffs seem to assert that the California defendants "hatched their scheme" to enter into the unauthorized agreements and "put it into effect" by signing them, but that is of no matter. For plaintiffs have not, as they must, made such a connection to New York. *Troma Entm't, Inc.*, 729 F.3d at 220; *see also* Compl. ¶¶ 42–47; Nasso Aff. at Exs. E–F (listing Industry Releasing as California-based distributor of *Darc*); Dkt. 10-5 at 2–3 (distribution agreement listing Industry Releasing as a California company and Netflix as having a California address). Plaintiffs' failure to plead direct injury to their intellectual property rights in New York is, therefore, fatal to their efforts to establish personal jurisdiction over the California defendants pursuant to C.P.L.R. § 302(a)(3)(ii). *See Troma Entm't, Inc.*, 729 F.3d at 220; *Royalty Network Inc.*, 638 F. Supp. 2d at 423. Accordingly, defendants' 12(b)(2) motion to dismiss for lack of personal jurisdiction over Goldfine, Industry Releasing and Hollywood Media Bridge is granted, and the claims against them are dismissed without prejudice.

## II. *Colorado River* Abstention

**\*6** In an effort to short-circuit litigation beyond that previously brought by Nasso and Darc Films LLC, defendants seek dismissal under the doctrine of *Colorado River* abstention. *See* Defs.' Mem. at 10–14. In certain exceptional circumstances, a federal court may abstain from exercising jurisdiction when parallel state-court litigation may fully resolve the dispute and conserve judicial resources. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246, 47 L. Ed. 2d 483 (1976). Guided by *Colorado River*, courts typically undertake a six-factor analysis, heavily weighted in favor of exercising jurisdiction. *See FDIC v. Four Star Holding Co.*, 178 F.3d 97, 101 (2d Cir. 1999). As plaintiffs note, however, the calculus changes in cases involving claims over which the federal courts possess exclusive jurisdiction. *See* Pls.' Opp'n Mem. at 8–12. In such cases, the absence of "broad state court jurisdiction that would enable the state court to dispose of the entire matter, including the issues before the federal court,"

renders abstention "clearly improper." *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 62 (2d Cir. 1986); *see also Colo. River Water Conservation Dist.*, 424 U.S. at 817, 96 S.Ct. 1236 (describing the "comprehensive disposition of litigation" as a rationale for abstention).

Nasso filed a complaint against Kim and his wife in Richmond County Supreme Court on June 6, 2018, one month after the film's release. *See* Compl. ¶ 49; State Compl. In that action, Nasso seeks damages for breach of contract and breach of fiduciary duties and injunctive relief ordering Kim to perform his duties to Morningstar by helping promote and distribute *Darc*. *See* Defs.' Mem. at 2; Compl. ¶ 50; State Compl. ¶¶ 63–84. While the state and federal cases arise out of the same facts and between some of the same parties, *Colorado River* abstention does not apply because the instant case, involving a single claim of copyright infringement, is one over which the federal courts have exclusive jurisdiction. *See* 28 U.S.C § 1338(a); *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 347 (2d Cir. 2000) (holding federal courts have exclusive jurisdiction over copyright infringement claims, including those arising from alleged contractual breach); *Philogene v. Duckett*, No. 17-CV-7224 (WHP), 2018 WL 3946447, at \*3 (S.D.N.Y. Aug. 16, 2018) (rejecting defendants' request to abstain in copyright infringement case). In accord with this solid precedent, therefore, defendants' invitation to abstain from hearing this case is declined.

## III. Failure to State a Claim

The remaining defendants move to dismiss for failure to state a claim of copyright infringement. *See* Defs.' Mem. at 14–18. To overcome such a motion, made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* It is black letter, of course, that in deciding such matters, the district court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). It may, in reaching its decision, consider documents that are attached to, integral to or referenced in the complaint. *See Palin v. New York Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019);

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

In assessing the plausibility of a copyright infringement claim, the motion court must be satisfied that the complaint sufficiently alleges that (1) plaintiffs own a valid copyright and (2) defendants copied original elements of the work without authorization or violated another of the exclusive rights afforded copyright owners pursuant to the Copyright Act. *See Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011); *UMG Recording, Inc. v. Escape Media Grp., Inc.*, No. 11-CV-8407 (TPG), 2014 WL 5089743, at *19 (S.D.N.Y. Sept. 29, 2014). It is undisputed that Morningstar is the sole owner of a valid, registered copyright to *Darc*. Compl. ¶¶ 1, 38, 64; Defs.' Mem. at 7. Plaintiffs claim defendants knowingly infringed on that copyright by copying, publishing, displaying, exporting and distributing *Darc* to Netflix and Amazon in the United States and abroad without Kim's consent, which was required to enter into distribution agreements on behalf of Morningstar. Compl. ¶¶ 65–67. Plaintiffs also claim defendants infringed by providing copies of *Darc* to third parties. *Id.* ¶ 68; *see also* 17 U.S.C. § 106(1) (right to reproduce copies); *id.* § 106(3) (right to distribute copies).

*7 Plainly, these allegations suffice to state a *prima facie* claim of copyright infringement as a general matter. The question, however, is whether plaintiffs have stated a claim against each defendant individually, as they must because dismissal will be determined as to each individually. *See Curry v. Comm'n on Hum. Rts.*, No. 18-CV-4221 (BMC), 2018 WL 11219906, at *1 (E.D.N.Y. Aug. 2, 2018) ("[P]laintiff must provide a short, plain statement of claim against each defendant so that they have adequate notice of the claims against them."); *Ferrara v. Maturo*, No. 17-CV-0360 (JCH), 2017 WL 4273291, at *4 (D. Conn. Sept. 26, 2017) (examining whether plaintiff "has sufficiently stated a claim for relief against each defendant directly and individually").

### A. Nasso

The first named defendant, Nasso argues that plaintiffs have failed to state a claim against him individually because he acted only on behalf of Morningstar and is protected by its corporate form, while plaintiffs counter that Nasso is directly or vicariously liable for the infringement. *See* Compl. ¶¶ 74–75; Defs.' Mem. at 16.

#### i. *Direct and Vicarious Liability*

A claim of copyright infringement based on a theory of direct liability is stated if the plaintiff plausibly pleads that the alleged infringer engaged in " 'volitional conduct' that 'cause[d]' the infringement." *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 742 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) (quoting *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008)). Plaintiffs allege that Nasso engaged in intentional infringement by negotiating and entering into the contracts that resulted in the unauthorized copying and distribution of *Darc*, rendering Nasso directly liable. Compl. ¶¶ 17–18, 42–47, 60, 65–69.

But, that is not the only path to a sufficient pleading. "[V]icarious liability for copyright infringement can be established where a corporate officer had (1) a right and ability to supervise the company's activities and (2) an obvious and direct financial interest in the exploitation of copyrighted materials by the corporate entity." *J & J Sports Prods., Inc. v. Ahuachapan Corp.*, 422 F. Supp. 3d 652, 659 (E.D.N.Y. 2019) (internal citation and quotation marks omitted). As a Morningstar manager, Nasso had the right and ability to supervise the company's activities. Compl. ¶¶ 3, 11, 32, 35; Nasso Aff. at Ex. A ("Morningstar Operating Agreement"). Plaintiffs state that Nasso possessed a direct financial interest in the exploitation of *Darc* and has profited from his infringement. Compl. ¶ 77. Specifically, he directed royalties from *Darc* to his companies J.R.N. Productions, B.C. and Darc Investors, LLC. *Id.* ¶¶ 17–18. Although plaintiffs add that they have not received records stating the amount of royalties Nasso has received from the distribution deals, Nasso undoubtedly had a financial interest in *Darc*'s distribution when he committed the alleged infringement and may eventually realize economic benefits from it. *Id.* ¶ 59. Therefore, plaintiffs have sufficiently alleged that Nasso is directly and vicariously liable for the infringement of their copyright to stave off this challenge.

#### ii. *Liability Waiver and Indemnification*

Nasso argues that he is, nonetheless, shielded from liability by Morningstar's operating agreement. *See* Defs.' Mem. at 20–21.[4] Nasso points to the agreement's liability waiver, which states that managers are not "liable to Company or the Members for any loss or damage resulting from any mistake of fact or judgment or any act or failure to act unless the mistake, act, or failure to act is the result of fraud, gross negligence, or willful misconduct." *See id.*; Morningstar Operating Agreement, art. 4.6. As plaintiffs note, however,

this provision's explicit exclusion of "willful misconduct" encompasses their claim against Nasso for willful copyright infringement. *See* Pls.' Opp'n Mem. at 22–23. Plaintiffs claim Nasso entered into a distribution deal without their consent despite knowing that consent was required. Compl. ¶¶ 42–47, 60, 69. Nasso cannot, therefore, rely on this provision to escape liability at the Rule 12 stage.

**\*8** Nasso also cites the indemnification clause in Morningstar's operating agreement, which provides that Morningstar is to indemnify and hold Nasso harmless "[t]o the greatest extent of the law ... against any loss, cost, or expense ... including the defense of a judgment resulting from, any action brought by a Member," such as Kim. *See* Defs.' Mem. at 20 (quoting Morningstar Operating Agreement, art. 8.1). Indemnification clauses such as this one likewise do not, as a matter of law, apply to willful or deliberate misbehavior. *See* N.Y. Limit. Liab. Co. § 420. Given that, at this point, Nasso's defense must be judged on the strength of plaintiffs' allegations deemed true and with all inferences drawn in their favor, Nasso's contention that the Morningstar operating agreement absolves him of liability and indemnifies him against a potential damages award cannot succeed.

### B. J.R. Nasso Productions

J.R. Nasso Productions moves to dismiss the claim against it, arguing plaintiffs fail to allege that it had any involvement with *Darc*, Morningstar or copyright infringement. Defs.' Mem. at 7, 16. Plaintiffs' sole allegation against J.R. Nasso Productions is that its name appeared, beside the Hollywood Media Bridge name, in the opening credits of the film, falsely indicating, they contend, that the two companies owned the copyright. Compl. ¶ 41. Defendants argue that this statement is too attenuated to implicate J.R. Nasso Productions in the alleged infringement, though they do not deny having Nasso as an owner. *See* Defs.' Mem. at 16.

It is at this point that plaintiffs' claims turn tissue-thin and the complaint founders. Their allegation that viewers seeing J.R. Nasso Productions's name in the opening credits would mistakenly view it as the copyright owner is speculative and conclusory. Many names of non-copyright owners, such as those of actors and directors, appear in film credits. More importantly, claims alleging that an entity has falsely represented itself as a copyright owner arise under the Lanham Act, not the Copyright Act, making this allegation unhelpful to plaintiffs' bid to state a copyright infringement claim against J.R. Nasso Productions. *See Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 781 (2d Cir. 1994).

In fact, there are no infringement-related allegations against J.R. Nasso Productions. Indeed, an essential element of a copyright infringement claim is the allegation that a defendant had individually violated one of the copyright owner's exclusive rights, but plaintiffs do not plead facts showing J.R. Nasso Productions did so. *See Kwan,* 634 F.3d at 229. They do not claim, for example, that the company was involved in distributing or copying *Darc*, or was party to any unauthorized agreement. Its name does not appear on the allegedly unauthorized agency or distribution agreements, and plaintiffs do not allege that Nasso was acting on its behalf at any point when making those deals. *See* Nasso Aff. at Exs. E–F; Dkt. 10-5. Overall, plaintiffs' sole allegation is not enough to state a copyright infringement claim against J.R. Nasso Productions and the claim against it must be dismissed.

### IV. Affirmative Defenses

#### A. Equitable Estoppel

In their final effort to prevent the lights from going out on their motion, defendants raise a smattering of affirmative defenses, the first of which is equitable estoppel. *See* Defs.' Mem. at 18–20. To prevail on an estoppel defense to a copyright claim, defendants must show that:

> "(1) [P]laintiff had knowledge of defendant's infringing acts, (2) plaintiff either intended that defendant rely on his acts or omissions or acted or failed to act in such a manner that defendant had a right to believe that it was intended to rely on plaintiff's conduct, (3) the defendant was ignorant of the true facts; and (4) the defendant relied on plaintiff's conduct to its detriment."

**\*9** *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583, 617 (D. Conn. 2019) (quoting *Dallal v. The New York Times Co.*, No. 05-2924, 2006 WL 463386, at \*1 (2d Cir. Feb. 17, 2006)).

As is readily apparent from its mere stating, this inquiry is "peculiarly fact-specific" and, therefore, generally inappropriate for resolution on a motion to dismiss. *Broad. Music, Inc. v. Hearst/ABC Viacom Ent. Servs.*, 746 F. Supp. 320, 329–30 (S.D.N.Y. 1990). Tellingly, and fatally, none of the evidence that defendants point to in support of this defense, such as Kim's texts, emails and social media posts, is properly before the Court on this motion. *See* Defs.' Mem. at 19–20; Dkts. 10-6, 10-7, 10-9. The complaint, meanwhile, clearly alleges that Kim was unaware of and did not consent to defendants' allegedly infringing distribution deal. *See* Compl.

¶¶ 42–47. As such, defendants cannot prevail on this defense at this stage of the proceedings.

### B. Laches

Defendants also raise the equitable defense of laches, which applies where plaintiffs have waited an unreasonably long time in filing a complaint, resulting in prejudice to defendants. *See* Defs.' Reply, Dkt. 14, at 6–8; *Hicks v. Leslie Feely Fine Art, LLC,* No. 20-CV-1991 (ER), 2021 WL 982298, at *10 (S.D.N.Y. Mar. 16, 2021). Here, too, defendants' timing is off. A laches defense is typically unavailable on a motion to dismiss, given its similarly fact-intensive nature. *Hicks,* 2021 WL 982298, at *10. Most importantly, the Supreme Court has held that defendants cannot prevail on a laches defense where plaintiffs' claims were brought within the Copyright Act's three-year statute of limitations. *Petrella v. Metro-Goldwyn-Mayer, Inc.,* 572 U.S. 663, 686, 134 S. Ct. 1962, 1978, 188 L. Ed. 2d 979 (2014); *see also LEGO A/S,* 404 F. Supp. 3d at 616 *(applying Petrella).* A copyright claim accrues, starting the three-year clock, "when an infringing act occurs." *Petrella,* 572 U.S. at 670, 134 S.Ct. 1962. The allegedly unauthorized agency agreement was entered into on October 30, 2017 and the distribution deal with Netflix in early February 2018, the *Darc* copyright was registered on February 20, 2018 and Netflix began distributing *Darc* on May 1, 2018, all within three years of the complaint's June 8, 2020 filing. *See* Compl. ¶¶ 38, 43, 47; Dkt. 10-5. While a laches defense in situations like this can rarely succeed as a matter of law, even at the threshold, it can fail as a matter of law. Indeed, that is the case here, where the facts are indisputable and fatal to the affirmative defense. Defendants' laches defense fails in light of controlling Supreme Court precedent. The motion is denied and the defense is stricken.

### C. Waiver

Defendants next seek dismissal based on the affirmative defense of waiver. *See* Defs.' Reply at 6–8. "[A] claim of waiver requires proof of an 'intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it.' " *Capitol Records, Inc. v. Naxos of Am., Inc.,* 372 F.3d 471, 482 (2d Cir. 2004) (quoting *Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.,* 76 A.D.2d 68, 81, 430 N.Y.S.2d 179 (4th Dep't 1980)). Waiver requires clear, unequivocal conduct and " 'may not be inferred from mere silence or inaction.' " *Flo & Eddie, Inc. v. Sirius XM Radio Inc.,* 80 F. Supp. 3d 535, 540 (S.D.N.Y. 2015) (quoting *Bank of Am., N.A. v. 414 Midland Ave. Associates,*

*LLC,* 78 A.D.3d 746, 750, 911 N.Y.S.2d 157 (2d Dep't 2010)). Defendants bear the burden to establish this defense. *Mooney v. City of New York,* 219 F.3d 123, 131 (2d Cir. 2000). Further, in copyright cases, courts "generally reject defenses predicated on a plaintiff's failure to act in the face of prior infringement." *Flo & Eddie, Inc.,* 80 F. Supp. 3d at 540.

**\*10** As with the other grounds pegged to their affirmative defenses, and for similar reasons, defendants fall well short of their goal. For example, they baldly assert that Kim was aware of the agency and distribution agreements and supported *Darc*'s distribution. Though defendants rely upon emails and text messages inadmissible at this juncture, *see* Defs.' Reply at 6–8, the language within the four corners of the complaint and the other documents properly before the Court on this motion fail to show that Kim intentionally, knowingly waived any rights. The complaint does not mention any communications between the parties to this effect, nor does it state any other facts establishing that plaintiffs consented to defendants' distribution and copying of the film. Rather, it states that defendants entered into an agency agreement without plaintiffs' knowledge or consent, while plaintiffs were actively negotiating a different agreement for *Darc*'s marketing and distribution, and have not shared any royalties with plaintiffs. Compl. ¶¶ 39–47, 59. Defendants have, therefore, failed to show that plaintiffs waived their rights to distribute *Darc.* They afford no basis for Rule 12 dismissal.

### Conclusion

For the foregoing reasons, defendants' 12(b)(2) motion to dismiss for lack of personal jurisdiction is granted as to Phillip Goldfine, Industry Releasing, Inc. and Hollywood Media Bridge, LLC. Defendants' 12(b)(6) motion to dismiss for failure to state a claim is granted as to J.R. Nasso Productions, LLC and denied in all other respects. The complaint is dismissed without prejudice as to these four defendants. Leave to amend the claims against them is granted, provided that plaintiffs can do so in good faith within 30 days of the entry of this order on the docket.

So Ordered.

**All Citations**

--- F.Supp.3d ----, 2021 WL 4076979

**Morningstar Films, LLC v. Nasso, --- F.Supp.3d ---- (2021)**

2021 WL 4076979

Footnotes

1   The facts are drawn from the complaint and taken as true, with all reasonable inferences drawn in plaintiffs' favor. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). As to the exhibits submitted with the parties' briefing, the Court declines to convert the instant motion to one for summary judgment, so in resolving the 12(b)(6) motion may consider only "statements or documents incorporated by reference, and documents on which the complaint heavily relies," and matters of which judicial notice may be taken. *Singh v. Wells*, 445 F. App'x 373, 375 (2d Cir. 2011); *see also Palin v. New York Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) (courts may consider documents "integral" to the complaint, such as "a contract, agreement, or other document essential to the litigation"). The Court will not consider the parties' affidavits or other documents outside the four corners of the complaint, such as the parties' text messages and emails, except to the extent they bear on the matter of personal jurisdiction. *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986); *Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.") (internal citation and quotation marks omitted); Dkts. 10-6, 10-7, 10-9, 14-2. The Court takes judicial notice of items docketed in the Richmond County Supreme Court action and the corporate registration documents filed with the California Secretary of State, which are matters of public record whose accuracy is undisputed. *See, e.g.*, Dkts. 10-3, 10-8, 13-3–13-9.

2   The proposed agency agreement and distribution agreement are incorporated by reference in and are integral to the complaint. Compl. ¶¶ 43–47. As such, they are properly considered on this motion.

3   The California defendants also argue that this Court lacks general jurisdiction over them. *See* Defs.' Mem. at 9 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 122, 134 S. Ct. 746, 751, 187 L. Ed. 2d 624 (2014); N.Y. C.P.L.R. § 301(a)(1)). While they are correct, they answer a question that was not asked. General jurisdiction is plainly inapplicable here; only specific jurisdiction need be present since plaintiffs argue the action arises out of defendants' contacts with New York.

4   The Court does not evaluate the indemnification argument with respect to the California defendants, as the claims against them are dismissed due to lack of personal jurisdiction. For the same reason, it also does not address their apparent authority argument.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT D

2017 WL 449913
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

FREEPLAY MUSIC, LLC, Plaintiff,

v.

DAVE ARBOGAST BUICK-
GMC, INC., Defendants.

16 Civ. 442 (NRB)
|
Signed January 18, 2017

**Attorneys and Law Firms**

Michelle Rene Usitalo, Tatiana Markel, Oren J. Warshavsky, Baker & Hostetler LLP, New York City, NY, for Plaintiff.

**MEMORANDUM & ORDER**

NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE

**\*1** Plaintiff Freeplay Music, LLC ("Freeplay") sued defendant Dave Arbogast Buick-GMC, Inc. ("Arbogast") for violating the Copyright Act, 17 U.S.C. § 101, et seq., alleging that Arbogast uploaded to the Internet certain videos containing music and sound recordings copyrighted by Freeplay. Arbogast moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, defendant's motion is granted.

**BACKGROUND**

**I. Factual Background**[1]
Freeplay is a Delaware limited liability company with its principal place of business in New York. Am. Compl. ¶ 2. Freeplay holds the copyrights to numerous songs and sound recordings, which it licenses for a fee when used for commercial purposes. Id. ¶¶ 14-17, 21.

Arbogast is a car dealership that is incorporated in and has its principal place of business in Ohio. Id. ¶¶ 3, 22. According to plaintiff, Arbogast "boasts" of doing business throughout the country and provides financing applications tailored to residents of several states, including New York. Id. ¶¶ 7, 8. Arbogast advertises that it wants customers to "feel like part of the family," whether they are located "just around the corner ... or thousands of miles away." Id. ¶ 9. Arbogast publishes testimonials from non-Ohio customers and represents that it often ships vehicles to New York. Id. ¶¶ 10, 11.

As alleged in the Amended Complaint, Arbogast posted 279 videos to YouTube or other Internet sites; collectively, the videos incorporated twenty-three songs or sound recordings copyrighted by Freeplay. Id. ¶¶ 12, 23-27. Plaintiff alleges that Arbogast used the copyrighted material without obtaining a license or otherwise obtaining permission from Freeplay. Id. ¶ 27. Arbogast allegedly posted the videos in order to "advertise to potential customers, including those in New York." Id. ¶ 13.

**II. Procedural Background**
Plaintiff filed its initial complaint on January 20, 2016, see ECF No. 1, and the Amended Complaint on June 30, 2016, see ECF No. 25. The Amended Complaint asserts one count of copyright infringement under the federal Copyright Act and seeks injunctive relief and damages. On August 19, 2016, defendant moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). See ECF No. 30.

**DISCUSSION**

A plaintiff bears the burden of demonstrating that a district court has personal jurisdiction over a defendant. Penguin Grp. (USA) Inc. v. Am. Buddha ("Penguin I"), 609 F.3d 30, 34 (2d Cir. 2010), certified question answered, 16 N.Y.3d 295, **946 N.E.2d** 159 (2011). To survive a 12(b)(2) motion to dismiss, a plaintiff must make a prima facie showing that jurisdiction exists through "legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." Id. at 34-35 (internal quotation marks omitted) (alterations in original omitted).

**\*2** When an action arises under a federal statute lacking its own jurisdictional provision, such as the Copyright Act, a federal district court may exert personal jurisdiction over an out-of-state defendant only if such jurisdiction complies with

Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc., Not Reported in Fed. Supp...

Case 1:21-cv-04727-ARR-RER Document 8-3 Filed 10/12/21 Page 71 of 75 PageID #: 223

(1) the forum state's personal jurisdiction rules and (2) due process requirements. Id. at 35.

## I. New York's Long-Arm Statute: CPLR 302(a)(3)(ii)

### A. Legal Standard

Freeplay asserts that Arbogast is subject to personal jurisdiction under CPLR 302(a)(3)(ii), which provides for jurisdiction over an out-of-state defendant if "(1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce." Penguin I, 609 F.3d at 35; see also LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214, 735 N.E.2d 883, 886 (2000).[2]

The only issue in dispute is the third requirement—whether the alleged copyright infringements caused an injury in New York. Both parties argue that the issue is governed by the New York Court of Appeals' decision in Penguin Group (USA) Inc. v. American Buddha ("Penguin II"), 16 N.Y.3d 295, **946 N.E.2d** 159 (2011). In that case, the Court of Appeals held that a New York copyright holder suffers an in-state injury under CPLR 302(a)(3)(ii) when copyrighted printed literary material is uploaded to the Internet. The parties, however, disagree on Penguin II's application. Defendant interprets Penguin II as holding that a copyright holder suffers an in-state injury under CLPR 302(a)(3)(ii) *only* when "printed literary works" are uploaded to the Internet. Plaintiff counters that such a reading is too narrow and that Penguin II applies whenever copyrighted material is posted to the Internet. Neither position is persuasive.

Prior to Penguin II, it was well-established that for purposes of CPLR 302(a)(3)(ii) "the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction." Fantis Foods, Inc. v. Standard Importing Co., 49 N.Y.2d 317, 326, 402 **N.E.2d** 122, 126 (1980). Instead, jurisdiction needed to "be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there." Id. Moreover, courts had found that for certain commercial torts, such as unfair competition, the most "apt" situs of injury was the "place where plaintiff lost business" because it would "normally be a forum reasonably foreseeable by a tortfeasor

and it would usually be the place where the critical events associated with the dispute took place." Am. Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428, 433 (2d Cir. 1971).

**\*3** In Penguin, defendant American Buddha uploaded digital versions of four books to the Internet so that its 50,000 members could download them. Penguin, as the copyright holder and publisher, sued under the Copyright Act. American Buddha—an Oregon corporation that conducted no business in New York and uploaded the books to websites hosted on servers in Arizona and Oregon—argued that Penguin had not suffered an in-state injury for purposes of CPLR 302(a)(3)(ii). The District Court agreed, finding that Penguin had not established an in-state injury for purposes of CPLR 302(a)(3)(ii). Penguin Grp. (USA) Inc. v. Am. Buddha, No. 09 Civ. 528 (GEL), 2009 WL 1069158, at *4 (S.D.N.Y. Apr. 21, 2009).

On appeal, the Second Circuit found that New York authority was split on where the situs of injury was located in copyright infringement cases and certified the following question to the New York Court of Appeals:

> In copyright infringement cases, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?

Penguin I, 609 F.3d at 42.

Citing the significant role that the Internet played in the case, the Court of Appeals narrowed the question so that it only covered copyright infringement cases "involving the uploading of a copyrighted printed literary work onto the Internet...." Penguin II, 16 N.Y.3d at 301-02, **946 N.E.2d** at 161.

Under that formulation, the Court of Appeals held that the situs of the injury is the copyright holder's residence or principal place of business. Id. at 302, **946 N.E.2d** at 161-62. In reaching that decision, the Court relied on the "convergence of two factors": (1) the "function and nature of the Internet" and (2) "the diverse ownership rights enjoyed by copyright holders." Id. at 304-07, **946 N.E.2d** at 163-65.

Under the first factor, the Court focused on the "important role" played by the Internet in the specific context of the case. The Court reasoned that the "crux of Penguin's copyright infringement claim is not merely the unlawful electronic copying or uploading of the four copyrighted books" but

Case 1:21-cv-04727-ARR-RER   Document 8-3   Filed 10/12/21   Page 72 of 75 PageID #: 224

Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc., Not Reported in Fed. Supp....

"[r]ather, it is the intended consequence of those activities— the instantaneous availability of those copyrighted works ... for anyone, in New York or elsewhere, with an Internet connection to read and download ... free of charge." Id. at 304-05, **946 N.E.2d** at 163-64. "As a result, although it may make sense in traditional commercial tort cases to equate a plaintiffs [*sic*] injury with the place where its business is lost or threatened, it is illogical to extend that concept to online copyright infringement cases where the place of uploading is inconsequential and it is difficult, if not impossible, to correlate lost sales to a particular geographic area." Id. at 305, **946 N.E.2d** at 164. Given this, the Court concluded that "the out-of-state location of the infringing conduct carries less weight in the jurisdictional inquiry in circumstances alleging digital piracy and is therefore not dispositive." Id. at 304-05, **946 N.E.2d** at 163-64.

The Court next focused on the "unique bundle of rights" granted to copyright holders under the Copyright Act, including "the right of reproduction; the right to prepare derivative works; the right to distribute copies by sale, rental, lease or lending; the right to perform the work publicly; and the right to display the work publicly." Id. at 305, **946 N.E.2d** at 164. "Based on the multifaceted nature of these rights," the Court reasoned that "a New York copyright holder whose copyright is infringed suffers something more than the indirect financial loss we deemed inadequate in Fantis Foods"; as examples of such injuries, the Court identified the diminished incentive to create or publish works and the potential for market confusion. Id. at 305-06, **946 N.E.2d** at 164.

*4 The Court concluded:

> In sum, the role of the Internet in cases alleging the uploading of copyrighted books distinguishes them from traditional commercial tort cases where courts have generally linked the injury to the place where sales or customers are lost. The location of the infringement in online cases is of little import inasmuch as the primary aim of the infringer is to make the works available to anyone with access to an Internet connection, including computer users in New York. In addition, the injury to a New York copyright holder, while difficult to quantify, is not as remote as a purely indirect financial loss due to the broad spectrum of rights accorded by copyright law. The concurrence of these two elements ... leads us to ... conclude that the alleged injury in this case occurred in New York for purposes of CPLR 302(a)(3)(ii).

Id. at 306-07, **946 N.E.2d** at 165. The Court, however, explicitly declined "to address whether a New York copyright holder sustains an in-state injury pursuant to CPLR 302(a)(3)(ii) in a copyright infringement case that does not allege digital piracy." Id. at 307, **946 N.E.2d** at 165 n.5.

In Troma Entertainment, Inc. v. Centennial Pictures Inc., 729 F.3d 215 (2d Cir. 2013), the Second Circuit again considered the situs of a copyright injury under CPLR 302(a)(3)(ii). In Troma, the defendants entered into an agreement to broadcast two films in Germany without first acquiring a license from the films' New York copyright holders. The Second Circuit found that no injury occurred within New York state for purposes of jurisdiction under CPLR 302(a)(3)(ii). Id. at 220-21.

In reaching its decision, the Court reaffirmed the principles that a plaintiff's residence or domicile in New York and the suffering of economic damages in New York are insufficient, alone, to establish a direct injury in New York for purposes CPLR 302(a)(3)(ii). Id. at 218 (citing Fantis Foods, 49 N.Y.2d at 326, 402 **N.E.2d** at 126; Penguin I, 609 F.3d at 38).

The Second Circuit rejected that Penguin II was controlling. The Court first distinguished it on the grounds that it was possible to "circumscribe" the alleged injury in Troma to a particular location (although the Court declined to find whether that location was Germany, where the unlicensed films were broadcast, or California, where the defendants allegedly hatched their scheme). Id. at 220. The Second Circuit concluded that the case was therefore "more like traditional commercial tort cases in which the place where the plaintiff's business is lost or threatened exerts a significant gravitational influence on the jurisdictional analysis." Id. at 220 (internal quotation marks omitted) (alterations in original omitted).

The Second Circuit then considered Penguin II's "endorsement of the theory that out-of-state infringement may harm the bundle of rights held by a New York-based copyright owner in New York." Id. While acknowledging that "this is a plausible theory [of injury] after Penguin II," the Second Circuit found that "it is just that: a theory of injury that ... may satisfy section 302(a)(3)'s injury requirement in a particular case"; the Court continued that nothing in Penguin II "relieves intellectual property owners of the obligation, in each case, to allege facts demonstrating a non speculative and direct New York-based injury to its intellectual property rights." Id.

Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc., Not Reported in Fed. Supp....

Case 1:21-cv-04727-ARR-RER   Document 8-3   Filed 10/12/21   Page 73 of 75 PageID #: 225

**\*5** Applying this standard, the Second Circuit concluded that plaintiff had failed to adequately plead an injury to its unique rights as copyright holders. Plaintiff's allegations —that defendants' broadcasting of unlicensed copyrighted material in Germany caused, in plaintiff's terms, "generalized harm (i.e., statutory damages as a result of defendants' willful infringement) to its exclusive distribution right"—was "far too speculative to support a finding that [plaintiff] suffered injury in New York within the meaning of section 302(a)(3) (ii)." Id. at 220 (internal quotation marks omitted) (alterations in original omitted).

### B. Application

Applying this case law, we find that the situs of plaintiff's injury is Ohio, not New York, and therefore that we lack personal jurisdiction over Arbogast under CPLR 302(a)(3) (ii).

We first begin by identifying the nature of Freeplay's alleged injury. The crux of the Amended Complaint's allegations are that Arbogast "exploited" and "engaged in at least 279 uses" of Freeplay's copyrighted works, Am. Compl. ¶ 25, by "cop[ying] and publicly perform[ing]" the works "through digital transmissions on [YouTube]," id. ¶ 28, even though Arbogast "did not receive a license to exploit" the copyrighted material, id. ¶ 27.

The Amended Complaint, however, is surprisingly silent on the nature of the injury that plaintiff suffered. Indeed, the word "injury" is not even used. It is nevertheless reasonable to infer from the above allegations that the alleged copyright infringement deprived Freeplay of a potential customer— Arbogast—as well as the licensing revenue that Arbogast would otherwise have been required to pay to use the copyrighted material.[3] Plaintiff argues that focusing on its "loss of business ... is diversionary" and that its "license fee is not a consideration in the analysis of New York long-arm jurisdiction over Arbogast." Pl.'s Memo. of Law in Opp. to Def.'s Mot. to Dismiss (ECF No. 34) ("Opp.") at 14. However, plaintiff's opposition memorandum itself casts Freeplay's injury in commercial terms. See id. at 11 ("[T]he infringement here was for the commercial gain of the defendant to the detriment of the copyright owner."). Moreover, plaintiff ignores the Second Circuit's analysis in Troma, which specifically found that "the place where the plaintiff's business is lost or threatened exerts a significant gravitational influence on the jurisdictional analysis." Troma,

729 F.3d at 220 (internal quotation marks omitted) (alterations omitted).[4]

Beyond the loss of Arbogast as a potential customer and the corresponding loss of licensing revenue, no other injury is alleged or can be reasonably inferred from the Amended Complaint. Notably, for example, Freeplay does not allege that it was deprived of revenue or potential customers when the videos were viewed on the Internet by third parties.

Nor has Freeplay adequately alleged that it suffered an injury to the "unique bundle of rights" recognized by the New York Court of Appeals in Penguin II. As the Second Circuit made clear in Troma, even if a copyright holder enjoys such rights, the complaint must still include factual allegations sufficient to demonstrate an in-state injury to those rights:

> **\*6** It is not the case that any infringement anywhere can be said to diminish incentives to engage in a creative enterprise, or to harm, beyond the immediate loss of profits, the continuing value of one or more of a copyright holder's bundle of rights. Certainly the availability of the statutory damage remedy under the copyright laws does not establish automatically that this sort of injury has occurred.

Troma, 729 F.3d at 220.

Here, Freeplay has done no such thing; instead, it merely repeats conclusory allegations that its rights as a copyright holder have been violated. See, e.g., Opp. at 14 (arguing that Freeplay's "unique rights as a copyright holder and the digital pirating of its copyrighted works are the bases for its entire copyright infringement claim against Arbogast"). Such conclusory allegations are similar to those rejected by the Second Circuit in Troma and are plainly insufficient.

Having concluded that the loss of Arbogast as a potential customer and the resulting loss in licensing revenue are the only injuries that Freeplay has adequately alleged, we next consider whether such injuries satisfy CPLR 302(a)(2)(ii)'s in-state requirement. We find they do not.

Absent the Internet's role here, this case would appear to be controlled by the facts of Troma. There, as here, defendants engaged in out-of-state broadcasting of unlicensed copyrighted material, which the Second Circuit found did not, on its own, constitute an in-state injury for purposes of CPLR 302(a)(2)(ii).

Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc., Not Reported in Fed. Supp....

Case 1:21-cv-04727-ABR-RER   Document 8-3   Filed 10/12/21   Page 74 of 75 PageID #: 226

The question, therefore, is whether the fact that the copyrighted material was uploaded to the Internet here compels a different result under Penguin II. We conclude that it does not.[5]

First, the Internet does not play the same role in this case as in Penguin. There, the conduct at issue was "digital piracy" where the "primary aim" of the infringer was to upload the copyrighted material so that others could download pirated copies. Penguin II, 16 N.Y.3d at 306, **946 N.E.2d** at 165. As a result, the copyright holder in Penguin suffered an injury anytime a third party downloaded the copyrighted books, and that injury could occur anywhere in the world, including in New York.

In contrast, Freeplay has not alleged the type of "digital piracy" at issue in Penguin II, i.e., that defendant uploaded the copyrighted material so that third parties could download unlicensed versions over the Internet.[6] Nor has Freeplay alleged that it suffers any injury when third parties view Arbogast's videos or hear the copyrighted material. As a result, Freeplay's injury is more narrowly circumscribed to a single location than in Penguin II, making this case more akin to traditional commercial tort cases where the situs of injury is the place where plaintiff lost business. See Verragio, Ltd. v. Malakan Diamond Co., No. 16 Civ. 4634(CM), 2016 WL 6561384, at *4 (S.D.N.Y. Oct. 20, 2016) ("Absent allegations of digital piracy, traditional commercial tort principles govern the situs of injury question for purposes of determining whether a New York court has personal jurisdiction over a nonresident defendant pursuant to C.P.L.R. § 302(a)(3)."); cf. Penguin II, 16 N.Y.3d at 304-05, **946 N.E.2d** at 163-64 (noting that "it may make sense in traditional commercial tort cases to equate a plaintiffs [sic] injury with the place where its business is lost or threatened," but not when "the intended consequence" of defendant's act was to make the copyrighted material available for anyone, in New York or elsewhere, with an Internet connection to read and download ... free of charge").

*7 Second, although the Court of Appeals recognized that a copyright holder might suffer an in-state injury to its "unique bundle of rights," plaintiff has not adequately alleged any

such injuries. See supra. Accordingly, Penguin II's reasoning does not require a finding that the situs of Freeplay's injury is New York rather than Ohio.

We thus reject plaintiff's position that under Penguin II it need only establish that it "is a New York copyright holder and Arbogast uploaded [Freeplay's] copyrighted music to the Internet for public access." Opp. at 5; see also id. at 14 ("Arbogast's location in Ohio is inconsequential. [Freeplay's] unique rights as a copyright holder and the digital pirating of its copyrighted works are the bases for its entire copyright infringement claim against Arbogast."). Such a rule would mean that posting copyrighted material to the Internet for any purpose—such as posting a copyrighted photo to Instagram or Facebook—would automatically cause an in-state injury to a New York copyright holder. We do not believe that the Court of Appeals intended such a broad result.

Accordingly, we find that plaintiff has not suffered an instate injury for purposes of CPLR 302(a)(3)(ii). Since plaintiff has offered no other basis for exerting personal jurisdiction, we find that we lack personal jurisdiction over the defendant.

## II. Due Process
Having found that we lack personal jurisdiction over defendant under CPLR 302(a)(3)(ii), we do not consider whether exercising jurisdiction would comport with due process. See Penguin I, 609 F.3d at 35.

## CONCLUSION

For the reason set forth above, defendants' motion to dismiss for lack of personal jurisdiction is granted. This Memorandum and Order resolves Docket No. 30. The Clerk of the Court is directed to dismiss defendant Dave Arbogast Buick-GMC, Inc.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 449913

---

Footnotes

1    The following allegations are taken from the amended complaint filed on June 30, 2016 (ECF No. 25) (the "Amended Complaint" or "Am. Compl.") and are assumed true for purposes of this motion.

Case 1:21-cv-04727-ARR-RER   Document 8-3   Filed 10/12/21   Page 75 of 75 PageID #: 227

Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc., Not Reported in Fed. Supp....

CPLR 302(a)(3)(ii) states, in pertinent part:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent. commits a tortious act without the state causing injury to person or property within the state, ... if he ... expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

CPLR 302(a)(3)(ii).

Freeplay's lost licensing revenue appears to be $250 per copyrighted work. See Am. Compl. ¶ 18 (screenshot of Freeplay's website showing licensing fee for business use on YouTube).

Both the Second Circuit and New York Court of Appeals have referred to a plaintiff's "lost business" without explaining what is meant by the phrase. We interpret it to refer to the loss of potential customers or sales resulting from the alleged copyright infringement.

At least two opinions from this Circuit arguably reach a different conclusion, as they appear to interpret Penguin II as applying whenever copyrighted material is posted to the Internet. See Pablo Star Ltd. v. Welsh Gov't, 170 F. Supp. 3d 597, 607 (S.D.N.Y. 2016); Rogers v. Ecolor Studio, No. 11 Civ. 4493(ARR)(RER), 2013 WL 752256, at *2 (E.D.N.Y. Feb. 7, 2013), report and recommendation adopted, 2013 WL 750120 (E.D.N.Y. Feb. 27, 2013). However, given the opinions' cursory treatment of the issue, we do not find them instructive here.

We thus interpret the Court of Appeals' reference to "digital piracy" more narrowly than plaintiff, who appears to interpret it as referring to uploading copyrighted material to the Internet for any purpose.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.